[No. 35314.    Department Two.    January 5, 1961.]

ELLA ROBERTSON, *Respondent,* v. FRANK T. BELL, *Appellant.*[1]

[1]Reported in 358 P. (2d) 149.

*Collins & White* and *Clifford O. Moe,* for appellant.

*Wilmot W. Garvin,* for respondent.

ROSELLINI, J.—The respondent brought this action to recover damages for malicious prosecution. In her complaint she alleged that the appellant had caused her to be arrested on March 23, 1958, and taken to the city hall, where she was held for about two hours, and that he had procured the issuance of the warrant maliciously and without probable cause to believe that she was guilty of the charge contained in the warrant. The jury returned a verdict in her favor.

The appellant contends that his evidence showed, as a matter of law, that probable cause existed.

The appellant was the owner, through a family corporation, of a business building in Ephrata, in the basement of which was the lounge and clubroom of the Club Ephrata, a nonprofit fraternal club. The respondent had recovered a judgment against the Club Ephrata and had bought in the furnishings and fixtures at a sheriff's sale. At that time the club had lost its license and was not in operation.

A receiver, who had been appointed upon the petition of the respondent to take charge of and sell the assets, made arrangements with the appellant to leave the furnishings and fixtures on the premises, it being their mutual hope that the club might be reactivated and the furnishings sold to the new operators. The receiver testified that this was done at the request of the appellant.

On the other hand, the appellant claimed that it was done for the benefit of the receiver and the respondent; that the receiver promised to pay rent for the premises while the furnishings were left there, and that both he and the respondent had assured the appellant that the rent would be paid. The respondent denied that she had ever agreed to pay rent on the premises. It is undisputed that no rent was paid after the club ceased operations and went through bankruptcy.

Thereafter various efforts were made to refinance the Club Ephrata and various negotiations for the sale of the furnishings and fixtures back to the club transpired between the respondent and members of the club. When the final offer had been refused as inadequate, the respondent was notified by the club president, Frank A. Bell, that the furnishings and fixtures would have to be removed.

On the following morning, which was Sunday, the respondent, who lived in Spokane, went to Ephrata with a crew of men. Having obtained from the receiver a key and an inventory of the furnishings and fixtures, she entered the club and began the removal. The appellant, who was having breakfast at a hotel across the street, observed the activity at the club and went over to investigate.

There was a disparity in the testimony as to what took place when the appellant entered the club. According to the respondent and the auctioneer who was in charge of the movers, the appellant told them that the furniture was his and that if they did not stop moving it out, he would have them arrested. He asked how they entered the place, and was told that the respondent had been given a key by the receiver.

The appellant's recollection of the event was as follows:

" . . . I saw this piece of furniture . . . was sticking in the front door and I thought the place was afire or something, I thought the people were getting out the furniture, I didn't know anybody was there, so I went over to see what the trouble was and they were prying this piece of furniture out the door. And, of course, I went down in and I got down in I heard the water sizzling, they had busted a sleeve on the plumbing behind the bar, I went around and turned the water off and asked them what was going on. I don't know who I talked to, I didn't know none of them, there was five or six men there with crowbars and pinch bars, so I said, 'What's going on here?' And they said, 'We are going to take this furniture out.' And I said, 'Well, you don't have to tear the building up to get the furniture out.' And they said, 'Well, we come down to get it.' And I said, 'How much of it are you going to take?' 'Going to take it all, the carpet and all,' and I said, 'Well, I don't think that belongs to you, you take what belongs to you but you can't take the other.' "

Sometime later, according to his testimony, he told the respondent he would have to have her arrested if she didn't stop tearing the place up. She refused to stop and he called his attorney, who went over to the club and examined the activity with him, but did not speak to the respondent or the movers. He then went back to his office, looked up the statute on malicious trespass, and drew up a complaint, which the appellant signed, and obtained a warrant, addressed to the chief of police, which provided:

"WHEREAS, Frank T. Bell has this day complained in writing, under oath, to the undersigned Police Judge in and for said city, that on the 23 day of March, 1958, in said City and State, Ella Robertson and John Doe did wilfully and unlawfully break and enter and trespass on the property of Colum-

bia Basin Finance and Development Company at 12 B SW and unlawfully removed therefrom personal property subject to a landlord's lien for unpaid rent, and damaged the building thereby.

"Therefore, in the name of the City of Ephrata, you are commanded forthwith to apprehend the said Ella Robertson and John Doe and bring him before me to be dealt with according to law."

The arrest of the respondent and the auctioneer followed. They were taken to the city hall and detained there (although not in jail cells) while the respondent contacted her attorney. He advised her that she could either post bond, remain in jail until the matter could be heard by the court, or try to make an arrangement with the appellant whereby he would dismiss the charges against her. Since she did not have sufficient funds to post bond and wanted to get out of custody, she chose the latter course.

The attorney then went to see the appellant, who stated that he had a rent claim against the respondent and wanted some of the furnishings left for security. The respondent agreed to this, and the appellant had the case dismissed. The following day she sued him for conversion of these items. That suit resulted in a money judgment in her favor. This suit for malicious prosecution followed.

The appellant first contends that the evidence showed conclusively that he had made to his attorney a full disclosure of all the facts known to him, and that probable cause was thereby established as a matter of law.

■ To maintain an action for malicious prosecution, the plaintiff must allege and prove (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn. (2d) 485, 125 P. (2d) 681, and authorities cited therein.

■ While the burden is upon the plaintiff to establish want of probable cause, if he shows that the criminal proceedings were dismissed or terminated in his favor, he has made a *prima facie* case of want of probable cause, according to the cases in this jurisdiction.

■ If it clearly appears that the defendant, before instituting criminal proceedings against the plaintiff, made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to him, and that the prosecuting attorney thereupon preferred a criminal charge and caused the arrest of the accused, probable cause is thereby established as a matter of law and operates as a complete defense to a subsequent action by the accused. And the same rule prevails where such disclosure was made to a competent practicing attorney, and the criminal prosecution was instituted upon his advice. *Peasley v. Puget Sound Tug & Barge Co., supra,* and cases cited therein. But where the evidence presents an issue of fact as to whether or not the defendant made to the prosecuting attorney, or to his own legal counsel, full disclosure of all the facts known to him, then such issue of fact must be submitted to the jury with proper instructions from the court as to what will constitute probable cause, and the existence or nonexistence of probable cause must then be determined by the jury. *Peasley v. Puget Sound Tug & Barge Co., supra,* and cases cited.

■ Here, the appellant's attorney had firsthand knowledge of the activity of the respondent in removing the furniture from the premises. The complaint which he drew indicates that he was not told that the respondent claimed to have entered the premises with the permission of the receiver, using a key furnished by him. Furthermore, the jury could justifiably find that there had never been an agreement for rent and that the appellant did not disclose this fact to his attorney. Had these facts been disclosed, it can be assumed that the attorney could not have drawn a complaint alleging that the respondent

". . . did wilfully and unlawfully break and enter and trespass on the property of Columbia Basin Finance

and Development Company at 12 B SW and unlawfully removed therefrom personal property subject to a landlord's lien for unpaid rent."

The jury could reasonably find that, although some complaint was made that the removal caused damage to the building, the true purpose of the appellant, in having the respondent arrested, was to prevent the removal of her property, upon which he had no claim. The trial court properly refused to hold that, as a matter of law, probable cause was shown, and did not err in submitting that question to the jury.

The appellant urges that his motion for judgment notwithstanding the verdict should have been granted because the agreement on the basis of which he dismissed his complaint against the respondent was a compromise of the dispute between the parties and established probable cause as a matter of law. The authorities which he cites (which are contained in 67 A. L. R. 513 and 34 Am. Jur. 725 § 42) follow the general rule that no such termination of a criminal proceeding as may be availed of for the purpose of an action for malicious prosecution can be predicated upon the dismissal of that proceeding, without regard to its merits, as the result of a compromise or settlement of the parties, particularly where such disposition of the matter has been induced by, or effected at the instance of, the person accused. The rule is not applied in cases where the settlement was not voluntarily and understandingly made, but was made under coercion or duress, nor where the dismissal is not shown to have been the result of a valid compromise or settlement.

We do not think the evidence showed an agreement of the type which would foreclose the action inasmuch as there was no compromise of the claim on which the prosecution was based, but simply an agreement to leave certain disputed items on the premises until the rights of the parties could be determined in court. In view of this fact, we need not decide whether the evidence would justify a finding that the consent of the respondent was obtained under duress because she was imprisoned and had no other

means of securing her release. It is the general rule that a person unlawfully imprisoned, who is induced by his prosecutor, or his agent, to sign an agreement in order to obtain his liberty, is not bound thereby. *Lyons v. Davy-Pocahontas Coal Co.*, 75 W. Va. 739, 84 S. E. 744; 17A Am. Jur. 560, § 5.

The court correctly held that no compromise which would foreclose the action was shown.

This conclusion disposes of other assignments of error addressed to the giving and refusing of certain instructions —the claim of error in each instance being founded upon the appellant's contention that a compromise of the charge was proved.

█ The appellant assigns error to the court's refusing an instruction containing the statutory definition of malicious trespass, but cites no authority for his contention that the statutory definition was relevant to the issues. It was not for the jury to determine whether the respondent had committed a malicious trespass, as that misdemeanor is defined by statute, since the charge was not made in the words of the statute. Rather the concern of the jury was to determine whether the appellant had reasonable cause to believe that the matters charged in the complaint in the criminal case were true. It was not error to refuse the instruction.

It is finally contended that the verdict was so excessive as to indicate that the jury was influenced by passion or prejudice and awarded punitive damages, contrary to law. The appellant did not move for a new trial or object to the amount of the verdict in the court below. It is too well established for citation of authority that questions not presented to the trial court cannot be considered on appeal.

The judgment is affirmed.

WEAVER, C. J., HILL, FINLEY, and FOSTER, JJ., concur.