[No. 23125–1–I.   Division One.   March 19, 1990.]

LISA BANKS, *Appellant,* v. NORDSTROM, INC.,
ET AL, *Respondents.*

*Joseph Chalverus,* for appellant.

*Suzanne Kelly Michael* and *Lane Powell Moss & Miller,* for respondents.

RINGOLD, J.*—The plaintiff Lisa Banks appeals from a summary judgment dismissing her complaint against defendants Nordstrom, Inc., and several Nordstrom's employees (referred to collectively as Nordstrom). Finding that material factual issues remain regarding her claim for malicious prosecution, we reverse.

On December 26, 1987, Gail Smith, a Nordstrom security officer at the downtown Seattle Nordstrom store, observed five individuals shoplifting. Seattle police officers were called. The suspects were questioned by Smith and the police officers and then arrested. Two of the suspects were identified as Lisa Banks and her father John Banks. In actuality, the individuals arrested were Sharon Banks, Lisa's older sister, and Sharon's boyfriend. Sharon was carrying Lisa's driver's license. The suspects were taken to the police station, booked, and released.

On January 5, 1988, defendant Evelyn Dingman a/k/a Sevelette, Nordstrom's civil claims manager, sent a letter to Lisa demanding civil restitution totaling $889.70. This letter, received on January 6, 1988, was Lisa's first notice of the shoplifting incident. At about this time, Lisa also received a notice from the prosecuting attorney's office that she had been charged with first degree theft and was scheduled to be arraigned on January 11, 1988.

Lisa immediately telephoned Gail Smith and informed her of the error. At Smith's request, Lisa and her father went to the Nordstrom store later the same day. Smith confirmed that Lisa and John Banks were not the individuals arrested on December 26, 1987, and gave Lisa a handwritten note on Nordstrom stationery, dated January 6, 1988 stating that Lisa was not the same woman who was arrested on December 26.[1] Lisa states that Smith also told her that she would get the charges dismissed.

---

*Judge Solie M. Ringold is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]The affidavits of Smith and Sevelette erroneously identify the date of the meeting with Lisa as January 12, rather than January 6, 1988.

Smith maintains that she called a "Detective Corbett" of the Seattle Police Department and told him that Lisa was not the woman arrested on December 26, 1987. The record does not disclose, however, who "Detective Corbett" is or when this call occurred. By affidavit, Detective Frank Kampsen, one of the investigating officers, stated that the Seattle Police Department's fingerprint system was inoperable on December 26, 1987, making it impossible to discover the false identification provided by the suspects. Kampsen further averred that the involvement of store security generally ceases at the time of arrest until trial and that Nordstrom "would not and could not" have prevented Banks's arraignment.

Lisa also contacted the prosecutor's office and was informed that the charges against her were still pending and that if she did not appear at the arraignment, a bench warrant for her arrest would be issued and she could go to jail. Lisa was unable to contact anyone at Nordstrom, except Ms. Sevelette on one occasion, who told her that she could not do anything because of "inventory." On January 11, 1988, Lisa appeared at arraignment. After entering her "not guilty" plea, Lisa was booked, fingerprinted, and released. The omnibus hearing was scheduled for January 22, 1988.

On the day after arraignment, Lisa retained counsel, who also was unable to contact either Ms. Smith or Ms. Sevelette. Counsel received a telephone call on January 21, 1988, from Mike Wargin, Nordstrom's security manager, who stated that "all efforts will be made to prevent a false arrest," but that he had not yet contacted Gail Smith or the prosecutor.

In response to a letter from Lisa's counsel, Ms. Sevelette sent a notarized statement by messenger to the prosecutor on January 22, 1988, indicating that Lisa and John Banks were not the shoplifting suspects. Based upon the affidavit, the charges against Lisa were dismissed just prior to the omnibus hearing. Both Smith and Sevelette assert that they heard nothing further from Lisa after she came to the

store for identification until the receipt of the letter from Lisa's counsel on January 19.

On March 18, 1988, Lisa filed the instant action against Nordstrom, Evelyn Sevelette, and Gail Smith, alleging claims of malicious prosecution, outrage, invasion of privacy, negligent hiring and supervision, and violations of the Consumer Protection Act. Lisa sought damages for "personal, mental and emotional anguish, . . . embarrassment and humiliation." Lisa also sought recovery for legal expenses and triple damages. The trial court granted Nordstrom's motion for summary judgment dismissing the action. This appeal followed.

## STANDARD OF REVIEW

■ In reviewing an order of summary judgment, we undertake the same inquiry as the trial court and determine whether the materials submitted demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). We view the materials submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## MALICIOUS PROSECUTION

Malicious prosecution is the label attached to a tort violating one's freedom from wrongful prosecution. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 119, at 870 (5th ed. 1984).

■ Banks first contends that there are material factual issues regarding her malicious prosecution claim. In order to maintain an action for malicious prosecution, the plaintiff must establish

(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and

(5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 497, 125 P.2d 681 (1942). Nordstrom asserts that no material factual issues exist as to elements (1), (2), and (5).

1. Prosecution Instituted or Continued by the Defendant.

Nordstrom's primary argument is that it did not "institute" or "continue" the prosecution against Lisa but merely called the police and assisted in the apprehension of the shoplifting suspects. No authority supports such a narrow interpretation of the "institution" requirement in a malicious prosecution action. *See, e.g., Odom v. Williams,* 74 Wn.2d 714, 719, 446 P.2d 335 (1968) (party who signed criminal complaint instituted the prosecution); *see also* 52 Am. Jur. 2d *Malicious Prosecution* § 24 (1970). Moreover, the basis for Lisa's claim is not the institution of the prosecution, but rather Nordstrom's alleged malicious *continuation* of the prosecution between January 6, 1988, when Nordstrom became aware of the misidentification, and January 22, 1988, when the prosecution was dismissed. Consequently Detective Kampsen's assertion that Nordstrom could not have prevented Lisa's *arraignment* is essentially irrelevant.[2]

Although Washington law has long recognized a cause of action for malicious prosecution *or* the malicious continuation of a prosecution, *see Peasley v. Puget Sound Tug & Barge Co., supra,* no reported Washington decision has directly addressed the circumstances here, in which a party that properly instituted or procured the institution of criminal proceedings subsequently became aware of the defendant's innocence. Potential liability under such circumstances is recognized by the Restatement (Second) of Torts § 655 (1977), which states:

---

[2]It is evident, and the court takes judicial notice of the fact based upon the events on January 22, 1988, that only the prosecutor had the authority between January 6 and January 22, 1988, to petition the court to dismiss the criminal complaint.

### § 655. Continuing Criminal Proceedings

A private person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings.

As one commentator has observed:

Not only the instigation of criminal proceedings but continuing to prosecute such proceedings maliciously after learning of their groundless nature will result in liability, although they had been begun in good faith and with probable cause. Clearly, it is as much a wrong against the victim and as socially or morally unjustifiable to take an active part in a prosecution after knowledge that there is no factual foundation for it, as to instigate such proceedings in the first place.

(Footnote omitted.) 1 F. Harper & F. James, *Torts* § 4.4, at 307 (1956); *see also* 52 Am. Jur. 2d, *supra* § 26; *see generally* Annot., *Malicious Prosecution: Liability for Instigation or Continuation of Prosecution of Plaintiff Mistakenly Identified as Person Who Committed an Offense,* 66 A.L.R.3d 10 (1975).

Whether a party has "continued" a criminal proceeding for purposes of malicious prosecution liability depends on the specific facts of the case. There is general agreement, however, that where the instigator loses control of the case once prosecution has commenced, his or her continued participation in the prosecution will not support liability for malicious prosecution. *Walsh v. Eberlein,* 114 Ariz. 342, 560 P.2d 1249, 1252 (Ct. App. 1977). "[A] malicious prosecution action will not lie where a prosecuting attorney is left to judge the propriety of proceeding with the charge and acts on his own initiative in doing so." *Walsh v. Eberlein, supra* at 345.

In *Walsh v. Eberlein, supra,* the plaintiff was arrested and charged with passing forged checks, based primarily on eyewitness identifications. Subsequently, the investigating detective became aware of exculpatory handwriting and polygraph evidence, as well as the existence of another suspect who had confessed to passing forged checks using the same name and identification as that allegedly used by the

plaintiff. The detective informed the prosecuting attorney of only a portion of the exculpatory evidence. After the charges against her were dismissed just prior to trial, the plaintiff sued the investigating detective for malicious prosecution. After a judgment was entered in the plaintiff's favor, the detective appealed.

In reversing the judgment, the *Walsh* court rejected the plaintiff's contention that the detective had maliciously "continued" the prosecution by failing to notify the prosecutor of all of the exculpatory evidence. The court noted that the prosecutor was aware of all of the exculpatory evidence and independently decided to continue with the prosecution. *Walsh,* at 345. Moreover, the prosecutor had expressly testified that dismissal of the prosecution was "not [the investigating detective's] decision . . .". *Walsh,* at 346. Resolution of the "continuation" issue in *Walsh* thus rested on a factual basis that is still disputed in the instant case.

Comment *c* to § 655 of the Restatement (Second) of Torts is misleading in suggesting that only affirmative conduct will sustain a cause of action for malicious prosecution.[3] As in all tort law inaction, failure to act, or an omission when there is a duty to act affirmatively (do something) may impose liability. The Restatement defines "tortious conduct" as follows:

> The word "tortious" is used throughout the Restatement of this Subject to denote the fact that conduct whether of act or

---

[3]Comment *c* to § 655 provides:

"*c. Active participation required.* In order that there may be liability under the rule stated in this Section, the defendant must take an active part in their prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. The fact that he initiated the proceedings does not make him liable under the rule stated in this Section merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused, even though they have the effect of convincing him that this is the fact."

omission is of such a character as to subject the actor to liability under the principles of the laws of Torts.

Restatement (Second) of Torts § 6 (1965).

We also decline to follow comment *c* to the extent it suggests that Nordstrom, after instituting the prosecution against the defendant, had *no* duty to inform the prosecutor once it learned of the mistake. Comment *c* would apply only if "the instigator of a proceeding loses control over the case once the prosecution has been initiated . . .". *Walsh v. Eberlein,* 114 Ariz. 342, 345, 560 P.2d 1249, 1252 (Ct. App. 1977). No case has been cited, nor have we found any decision, in which a court has exculpated a defendant from liability by remaining passive when there is a duty to act affirmatively. Whether Nordstrom had a duty, by virtue of its conduct here and whether Nordstrom lost control are material issues of fact to be determined by the trier of fact.

Here, when viewing the following evidence in the light most favorable to Lisa, a trier of fact could find that Nordstrom caused the continuation or prolongation of the criminal proceedings: Gail Smith assured Lisa that Nordstrom would have the charge dismissed. Lisa called the prosecutor's office seeking to avoid her appearance at the arraignment. Although Smith contends that she contacted a detective at the Seattle Police Department, the record does not indicate when this occurred. As late as January 21, the day before the scheduled omnibus hearing, Nordstrom's security manager indicated to appellant's counsel that he had not yet contacted the prosecutor. Although Nordstrom maintains it had no influence over the matter once the police had arrested the shoplifters, it is undisputed that the prosecution was dismissed immediately after Nordstrom sent a notarized statement to the prosecutor.

2. Probable Cause.

■ Nordstrom next contends that there was probable cause to institute the criminal proceeding against Lisa, based upon the identification provided by the shoplifting suspect. Generally, the dismissal of criminal charges establishes a prima facie case of want of probable cause in favor

of the plaintiff. *Peasley v. Puget Sound Tug & Barge Co., supra* at 498. Proof of probable cause is a complete defense to a malicious prosecution action. *Pace v. Brodie–National, Inc.,* 60 Wn.2d 654, 656, 374 P.2d 1000 (1962). A full and honest disclosure of all material facts to the prosecutor establishes probable cause as a matter of law. *Robertson v. Bell,* 57 Wn.2d 505, 510, 358 P.2d 149 (1961). Even if true, however, Nordstrom's assertion that there was probable cause to initiate the criminal proceeding is irrelevant; the issue is whether the defendant maliciously *continued* the prosecution. As set forth above, the circumstances surrounding the continuation of the proceeding against Lisa are disputed. Consequently, whether there was a want of probable cause is for the jury. *See Bender v. Seattle,* 99 Wn.2d 582, 593–94, 664 P.2d 492 (1983).

3. <u>Malice</u>.

■■ Relying on its argument that it did not institute the prosecution and that, in any event, there was probable cause to support initiation of the prosecution, Nordstrom fails to address the malice requirements. This reliance is incorrect for two reasons. First, a dismissal or termination of the criminal proceeding may establish a prima facie case of malice. The rule is stated in *Pallett v. Thompkins,* 10 Wn.2d 697, 699–700, 118 P.2d 190 (1941):

> A prima facie case of want of probable cause (*from which malice may be inferred*) is made by proof that the criminal proceedings were dismissed or terminated in plaintiff's favor. But malice is not necessarily to be inferred from such prima facie showing of want of probable cause.

(Citations and italics omitted. Italics ours.) *See also Peasley v. Puget Sound Tug & Barge Co., supra* at 498 (malice may be inferred from lack of probable cause). Second, in a malicious prosecution action, malice

> takes on a more general meaning, so that the requirement that malice be shown as part of the plaintiff's case in an action for malicious prosecution may be satisfied by proving that the prosecution complained of was undertaken from improper or wrongful motives or in reckless disregard of the rights of the plaintiff.

*Peasley v. Puget Sound Tug & Barge Co., supra* at 502. Whether Nordstrom's actions between January 6 and January 22 manifested "reckless disregard" for the appellant's rights is a factual question. *See Peterson v. Littlejohn,* 56 Wn. App. 1, 781 P.2d 1329 (1989).

4. <u>Damages.</u>

Nordstrom next contends that Lisa's claimed injuries of legal fees and emotional distress are insufficient to support a malicious prosecution action as a matter of law. Nordstrom relies on the general rule that

> unless there is interference with the person or property by a provisional remedy such as arrest, injunction or attachment as an incident to the maintenance of an action, a suit for malicious prosecution will not lie despite the fact that the action was instituted maliciously and without probable cause.

(Italics omitted.) *Petrich v. McDonald,* 44 Wn.2d 211, 220, 266 P.2d 1047 (1954) (quoting *Adley Express Co. v. Corn Exch. Bank Trust Co.,* 99 F. Supp. 406 (S.D.N.Y. 1951)). This principle was reaffirmed in *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 965, 603 P.2d 828 (1979), which held that a malicious prosecution action requires both an arrest or seizure of property and some special injury. Legal fees and emotional distress are not the requisite type of injuries in a malicious prosecution action absent an arrest or seizure of property. *Fenner v. Lindsay,* 28 Wn. App. 626, 630, 625 P.2d 180 (1981).

█ Nordstrom maintains that Lisa has not suffered the requisite harm because it was her sister who was in fact "arrested" and because Lisa appeared at arraignment "voluntarily." This cramped characterization of "arrest" ignores the reality of a summons to appear for arraignment. Lisa not only appeared at arraignment, she entered a plea and was then fingerprinted, released on bail, and required to appear on January 22, 1988, for the omnibus hearing. This was sufficient "interference with the person" to support a malicious prosecution claim.

In decisions subsequent to *Gem Trading Co.,* our Supreme Court has de–emphasized the arrest and special

injury requirements in malicious prosecution actions. In *Bender v. Seattle, supra,* a jeweler was charged with grand larceny and arrested; his store was searched pursuant to a search warrant and he was booked and held in custody for a short time prior to release on bail. The charge was subsequently dismissed, and the jeweler sued the City of Seattle for, among other things, malicious prosecution. Although the plaintiff in *Bender* had been arrested, the court did not discuss any special injury and reinstated a jury award of $80,000 in unspecified damages.

The court, in *Turngren v. King Cy.,* 104 Wn.2d 293, 705 P.2d 258 (1985), reversed a summary judgment dismissing the plaintiffs' malicious prosecution claim. The plaintiffs had been required to leave their house and stand in the yard at gunpoint while their house was searched pursuant to a warrant. The area had also been cordoned off and neighbors had been told to leave. The plaintiffs were not arrested or booked and no charges were ever brought. The plaintiffs filed an action for damages. In holding that the plaintiffs had made out a prima facie case of malicious prosecution, the court focused on the issue of probable cause. There was no discussion of an arrest or seizure of property or of any special injury.

## OTHER CLAIMS

Banks also contends that material factual issues remain regarding her claims for outrage, invasion of privacy, negligent hiring or supervision, and violations of the Consumer Protection Act, RCW 19.86. Banks has not cited any relevant authority in support of these allegations; nor has she identified the elements of these causes of action.

We note initially that Banks has directed no argument to her invasion of privacy claim. Consequently, we do not address the issue. *See generally Mark v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982); *see also Eastwood v. Cascade Broadcasting Co.,* 106 Wn.2d 466, 722 P.2d 1295 (1986).

■ The tort of outrage requires evidence of conduct that is so extreme and outrageous as to cause severe emotional distress. *See, e.g., Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975); *Jackson v. Peoples Fed. Credit Union,* 25 Wn. App. 81, 604 P.2d 1025 (1979); *Lewis v. Physicians & Dentists Credit Bur., Inc.,* 27 Wn.2d 267, 177 P.2d 896 (1947). Such conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community.'" (Italics omitted.) *Grimsby v. Samson, supra* at 59 (quoting Restatement (Second) of Torts § 46, comment *d* (1965)). The court determines initially if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Phillips v. Hardwick,* 29 Wn. App. 382, 387, 628 P.2d 506 (1981).

In *Guffey v. State,* 103 Wn.2d 144, 690 P.2d 1163 (1984), a state trooper stopped the plaintiff's car. Based on a radio report, the trooper believed the plaintiff to be a wanted felon. The trooper drew his revolver, pointed it at the plaintiff, and ordered the plaintiff out of the vehicle. The trooper then conducted a pat–down search. The court held that the trooper's conduct did not rise to the level of outrage as a matter of law. *Guffey,* at 146. Nothing in the record here approaches the same level of conduct found not to be outrageous as a matter of law in *Guffey.* The trial court, therefore, properly entered summary judgment on the outrage claim.

■ In order to establish a claim for negligent hiring, the plaintiff must prove, among other things, that the defendant knew or should have known of the employee's unfitness. *See generally Scott v. Blanchet High Sch.,* 50 Wn. App. 37, 43, 747 P.2d 1124 (1987), *review denied,* 110 Wn.2d 1016 (1988). Even if it is assumed that Nordstrom's employees were incompetent and that Banks was injured as the result of their incompetence, no evidence was presented suggesting that Nordstrom knew or should have known that its employees were unfit or likely to cause harm. *See La*

*Lone v. Smith,* 39 Wn.2d 167, 234 P.2d 893 (1951). Similarly, there is no evidence that Nordstrom failed to exercise ordinary care in the supervision of its employees. *See Scott v. Blanchet High Sch., supra.* The trial court properly entered summary judgment on the negligent hiring and supervision claim.

In order to establish a violation of the Consumer Protection Act, a private plaintiff must show, among other things, that the allegedly deceptive act sufficiently affected a public interest. *See Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 739, 733 P.2d 208 (1987). Factors relevant to the existence of a public interest are:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 790, 719 P.2d 531 (1986).

The record does not raise an inference that Nordstrom's alleged deceptive acts had occurred before or that they were part of a "generalized course of conduct." Consequently, the trial court properly entered summary judgment.[4]

The judgment of dismissal is reversed and the case remanded for further proceedings consistent with this opinion.

WINSOR, J., concurs.

COLEMAN, C.J. (concurring in part, dissenting in part)—I agree with the majority that the trial court properly entered summary judgment on Banks' claims for outrage, invasion of privacy, negligent hiring or supervision, and

---

[4]Pursuant to RAP 18.9, Nordstrom has requested attorney's fees for a frivolous appeal. Given our resolution of this appeal, Nordstrom's request is denied.

violations of the Consumer Protection Act. I disagree, however, with the majority's conclusion that material factual issues remain regarding her claim for malicious prosecution, and I therefore dissent from that portion of the opinion.

It is undisputed that the basis for Banks' claim of malicious prosecution is not the institution of the prosecution, which was clearly based upon probable cause, but rather Nordstrom's alleged malicious continuation of the prosecution between January 6, 1988, when Nordstrom became aware of the misidentification, and January 22, 1988, when the prosecution was dismissed. There is absolutely no evidence to support an inference that Nordstrom took any action in furtherance of the prosecution during this period. In fact, the uncontroverted evidence is that upon confirming that Banks was not the individual arrested on December 26, 1987, Gail Smith, a Nordstrom security officer, gave Banks a handwritten note on Nordstrom stationery dated January 6, 1988, stating that Banks was not the same woman who was arrested on December 26, 1987. For some inexplicable reason Banks did not show this document to any of the prosecuting authorities; nothing in the record indicates that she showed it to anyone at the arraignment or even raised the issue of the erroneous identification. Smith also filed an affidavit stating that she called "Detective Corbett" of the Seattle Police Department and told him that Banks was not the woman arrested on December 26, 1987. This statement, although uncorroborated, is not contradicted. The majority suggests that because Nordstrom arguably could have done more between January 6 and January 22, 1988, to obtain dismissal of the proceedings, it can be inferred that Nordstrom somehow continued the prosecution.

Contrary to the majority's assertion, potential liability under the circumstances presented by this record is not recognized by the Restatement (Second) of Torts § 655 (1977).

> A private person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by

himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings.

For liability to attach under the authority of this provision, an individual must take an *active* part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another. The comments and illustration to section 655 repeatedly stress that liability for malicious prosecution depends upon the defendant taking some active role in the continuation of the prosecution; it is not enough that the defendant simply remain passive, even where the defendant possesses knowledge that the accused is innocent:

*b.* The rule stated in this Section applies when the defendant has himself initiated criminal proceedings against another or procured their institution, upon probable cause and for a proper purpose, and thereafter takes an active part in pressing the proceedings after he has discovered that there is no probable cause for them. . . .

**Illustration:**

1. A, by swearing out a complaint, initiates the criminal prosecution of B for theft of A's watch. Before trial A discovers that the watch was not stolen and he had merely mislaid it. He informs C of his discovery. For the purpose of compelling B to pay a debt owed to C, C persuades the prosecuting attorney to proceed with the trial. C is subject to liability to B for malicious prosecution.

*c. Active participation required.* In order that there may be liability under the rule stated in this Section, the defendant must take an active part in their prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. The fact that he initiated the proceedings does not make him liable under the rule stated in this Section merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused, even though they have the effect of convincing him that this is the fact.

Restatement (Second) of Torts § 655, comments *b, c* (1977).

It is not necessary to determine if this court should follow comment *c* to section 655 of the Restatement (Second) of Torts to the extent that the comment suggests that Nordstrom had no duty to inform the prosecutor once it learned of the mistake. The restatement rule is clear that active participation in continuing the prosecution is required. In the record before us, Nordstrom did not in any sense actively participate in causing the continuation of this prosecution. Not only did Nordstrom not actively participate in the continuation of the prosecution, Nordstrom took affirmative steps to communicate to the authorities that there had been a misidentification. Moreover, in addition to the absence of any evidence of active participation, there is absolutely no evidence supporting any inference of malice. The majority suggests that because the criminal proceedings were dismissed in plaintiff's favor, that alone is sufficient to raise an inference of malice. The authorities relied upon by the majority do not support this proposition. In fact, as stated in *Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 502, 125 P.2d 681 (1942).

> [m]alice as a term of law has a broader significance than that which is applied to it in ordinary parlance. The word "malice" may simply denote ill will, spite, personal hatred, or vindictive motives according to the popular conception, but in its legal significance it includes something more. It takes on a more general meaning, so that the requirement that malice be shown as part of the plaintiff's case in an action for malicious prosecution may be satisfied by proving that the prosecution complained of was undertaken from improper or wrongful motives or in reckless disregard of the rights of the plaintiff. Impropriety of motive may be established in cases of this sort by proof that the defendant instituted the criminal proceedings against the plaintiff: (1) without believing him to be guilty, or (2) primarily because of hostility or ill will toward him, or (3) for the purpose of obtaining a private advantage as against him. Newell, Malicious Prosecution (1892), 237, § 3; 34 Am. Jur. 728, Malicious Prosecution, § 45; 38 C. J. 421–425, Malicious Prosecution, §§ 60–67; 3 Restatement, Torts (1938), § 668. We have recognized and applied this broader conception of the term in *Waring v. Hudspeth,* [75 Wash. 534, 135 P. 222 (1913)]. Compare *Ladd v. Miles,* [171 Wash. 44, 17 P.2d 875 (1932)].

In the instant case, the prosecution was not undertaken for "improper or wrongful motives", and there is absolutely nothing to suggest that Nordstrom took any action in furtherance of this prosecution in "reckless disregard of the rights of the plaintiff." Furthermore, actions for malicious prosecution are not favored in law and will be readily upheld only upon presentation of the proper elements. *Peasley,* at 496. For the reasons stated, I would affirm the summary judgment dismissal of Banks' claim for malicious prosecution.

Reconsideration denied April 30, 1990.

Review denied at 115 Wn.2d 1008 (1990).