[No. 10826.   Department Two.   September 27, 1913.]

E. H. WARING, *Respondent*, v. JOE HUDSPETH, *Appellant*.[1]

MALICIOUS PROSECUTION—PROBABLE CAUSE — MALICE —, EVIDENCE— SUFFICIENCY. In an action for malicious prosecution, the evidence in support of want of probable cause was such as to warrant the jury in inferring malice therefrom, where it appears that there was a dispute as to the title of ten cords of wood ricked on land acquired by the defendant, the plaintiff claiming to have purchased the wood from the former owner of the land, that the defendant sent teams for two loads, the plaintiff stated he would expect pay for it, and refused permission to remove the balance, whereupon the defendant swore to a complaint charging the plaintiff with grand larceny in stealing ten cords, although two cords were in the defendant's possession, and none of it had been used or removed by the plaintiff.

Appeal from a judgment of the superior court for Lincoln county, Carey, J., entered May 18, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for malicious prosecution. Affirmed.

*C. A. Pettijohn* and *R. M. Dye*, for appellant.

*Joseph Sessions*, for respondent.

MAIN, J.—By this action the plaintiff seeks to recover damages for malicious prosecution. On June 10, 1910, the plaintiff purchased from one S. O. Anderson a farm which

the latter then owned, situated about nine miles northeast of the town of Creston, in Lincoln county. Possession appears to have been given to the purchaser very soon thereafter. At the time of the sale, there was ricked in the timber upon the place ten cords of wood which had previously been sold by Anderson to Joe Hudspeth, the defendant in this action. As to whether any mention of this wood was made between Anderson and Waring, the plaintiff, at the time of the sale or the giving of possession, the evidence is not harmonious; Anderson claiming that it was mentioned and reserved, and Waring claiming that nothing was said relative to the wood. Sometime after the sale of the farm, the defendant, through one Huff, caused the purchase price of the wood, in the sum of $40, to be paid to Anderson. Sometime during the month of January, 1911, the defendant sent one Barnes and another man with teams and sleds to the farm for loads of wood. When they reached the farm and spoke to the plaintiff relative to the wood, some conversation took place relative to the ownership thereof, which resulted in Barnes and the man who accompanied him loading the sleds with the wood, plaintiff consenting. They then returned to Creston, where the wood was placed in the woodhouse of the defendant.

It is claimed by the men who hauled the wood that the plaintiff said that there was no wood on the farm belonging to Hudspeth; and that he would expect pay for the two loads which they took. Some days after this, the defendant, who had been absent from Creston for a time, returned to his home about twelve o'clock at night. He was informed by his wife that he had no wood on the Anderson place, she having been so told by Barnes. On the following morning, January 28th, the defendant called to see Huff, through whom he had paid Anderson for the wood. Huff advised the defendant to see Barnes. He was, in substance, told by Barnes that it did not seem as though there was any wood down there for him; that Waring had said that there was none to his knowledge but what was his; that Waring had said that he would

expect pay for the two loads that had been delivered. The
defendant then called on one H. H. Glover, who was engaged
in the lumber business. During the conversation with Glover,
the defendant said that he believed he would go down to the
farm and see about the wood. Whereupon, Glover suggested
that he had better not go, as he might get into trouble; and
stated that the plaintiff had had trouble in a few instances.
The defendant then went to the justice of the peace, he testi-
fies, and stated the case to the justice, who said it was a plain
case of stealing. The defendant thereupon demanded that
the plaintiff be arrested. The justice prepared a complaint
which charged the plaintiff with grand larceny in the steal-
ing of ten cords of wood. It was sworn to by the defendant.
The same evening, the officer went to the farm and there ar-
rested the plaintiff and brought him before the justice of the
peace. The plaintiff thereupon drew his check in the sum of
$100 in favor of the justice to insure his presence at the trial.
The cause came on for trial on January 31st. Thereupon, as
the transcript of the justice's docket shows, the complaint
was ordered to be amended so as to charge petit larceny in-
stead of grand larceny. An amended complaint was prepared
charging the plaintiff with petit larceny in the stealing of
two cords of wood. This complaint was sworn to by the de-
fendant (Hudspeth), and the plaintiff was rearrested. The
cause then went to trial. The justice found the plaintiff
guilty and fined him in the sum of one dollar. The cause was
then appealed to the superior court, and thereafter was dis-
missed before trial. The plaintiff and the defendant were not
acquainted with each other and, so far as the record shows, the
first time they had met was in the justice court. It appears
that the plaintiff had lived in the community where he resided
at this time for a period of nine or ten years; and was a man
of good standing therein. The defendant testified that it
was not through any fear of personal violence that he had the
plaintiff arrested instead of going to the farm to see about
the wood. The latter is described as a man somewhat di-

minutive in size and appearance, and much smaller than the defendant. In giving the reason for the arrest, the defendant, on cross-examination, testified:

"Q. Mr. Barnes, the man you sent down there, only was to get your wood, wasn't he? A. Yes, sir. Q. And then because he told you, because he told you when he got back, because Barnes told you, that this fellow said he ought to have to pay for the wood, you had him arrested for stealing it, didn't you? A. Yes, sir."

There is no evidence that the plaintiff ever did more than claim the wood. He did not use any of it, and he denies that he even made claim to it.

The present action is predicated upon the prosecution for grand larceny. The cause was tried to the court and a jury, and a verdict for the plaintiff returned in the sum of $500. Motions for nonsuit, to discharge the jury and enter judgment for the defendant, and for new trial were seasonably made and overruled. Judgment was entered on the verdict. The defendant appeals.

The only material question is, whether the evidence in support of the want of probable cause was such that the jury might reasonably infer malice therefrom. In actions for malicious prosecution, it is necessary that there be proof of want of probable cause for causing the arrest; and also malice. In *Harpham v. Whitney*, 77 Ill. 32, it is said:

"To maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution. There must be both want of probable cause and malice."

If, in a criminal proceeding, the facts were not sufficient to induce in the mind of a reasonable man a belief in the guilt of the accused, they would not constitute probable cause. In 19 Am. & Eng. Ency. Law (2d ed.), page 657, in defining probable cause, it is said:

"Though there are many verbal differences in the definitions of probable cause in the present connection, there is sub-

stantial agreement among the cases that probable cause for the institution of a criminal proceeding is the existence of facts sufficient to induce, in the mind of a reasonable man, a belief in the guilt of the accused."

Malice is defined in 26 Cyc. 48, as follows:

"To constitute malice there must be *malus animus,* denoting that the party who instituted the original proceeding was actuated by wrong motives. And it is held that no distinction exists in this respect between an action for instituting a civil suit and an action for instituting a criminal prosecution. The rule is well settled that malice may consist of any personal hatred or ill-will, any improper or sinister purpose, or any reckless disregard of the rights of others, which is inconsistent with good faith or the mere purpose to further the ends of justice."

From the facts stated, it appears that, when the cause was brought on for hearing before the justice of the peace, the charge of grand larceny was abandoned and a new complaint prepared alleging petit larceny. Under the rule announced in the previous decisions of this court, a discharge by a committing magistrate is *prima facie* evidence of the want of probable cause in the original prosecution, but it does not shift the burden of proof to the defendant. *Noblett v. Bartsch,* 31 Wash. 24, 71 Pac. 551, 96 Am. St. 886; *Charlton v. Markland,* 36 Wash. 40, 78 Pac. 132.

While the dismissal of a prosecution is evidence *prima facie* of the want of probable cause, malice will not be presumed from that fact alone; but there must be other evidence from which there may arise a reasonable inference of malice. In *Ton v. Stetson,* 43 Wash. 471, 86 Pac. 668, it is said:

"While it is true that in some cases, where the evidence is sufficient to show a want of probable cause, malice may be inferred, it is not an invariable rule that it must necessarily be inferred. It would be a harsh rule to hold that, where the evidence was merely sufficient to make a *prima facie* showing of want of probable cause, malice must necessarily be inferred therefrom. If, in connection with the *prima facie* showing of want of probable cause, affirmative acts of the respondent had

been shown disclosing the least feeling of bitterness, animosity or vindictiveness towards the appellant, then it might be that an inference of malice would be justified sufficiently to require the denial of a nonsuit."

In the present case, however, the respondent did not rely alone upon the fact of the dismissal of the charge of grand larceny; but put in evidence all the surrounding facts and circumstances. It appears that, when the complaint was sworn to by the appellant, he therein charged the respondent with the theft of ten cords of wood, two of which he knew were then in his own woodhouse; and with the theft of eight other cords, which was based on no fact other than that he had been informed that the respondent claimed the wood. It would seem obvious from the facts in this case, that the appellant in causing the arrest showed a disregard of the rights of the respondent which was inconsistent either with good faith or with the purpose to further the ends of justice. In such a case, malice may be inferred from the want of probable cause. It became a question for the jury.

The judgment will be affirmed.

CROW, C. J., ELLIS, and FULLERTON, JJ., concur.