PETER V. GISONDI, Respondent, v TOWN OF HARRISON, Appellant.

Second Department, October 27, 1986

## APPEARANCES OF COUNSEL

*Barry, McTiernan & Moore (Roger P. McTiernan* and *Michael F. Close* of counsel), for appellant.

*Keegan, Keegan & Associates, P. C. (Norman Bard* and *Beth J. Goldmacher* of counsel), for respondent.

## OPINION OF THE COURT

NIEHOFF, J.

The plaintiff, Peter Vincent Gisondi, was arrested and charged with the crime of rape in the first degree (Penal Law § 130.35), committed on August 8, 1979, after the complainant selected the plaintiff's picture from an array of 12 photographs, and the Town of Harrison police obtained an arrest warrant based upon her identification and the arresting officer's warrant application containing additional information. Thereafter, at a felony hearing where the complainant identified the plaintiff in person as the rapist, the Town Justice found reasonable cause to hold the plaintiff for action by the Grand Jury under CPL 180.70, notwithstanding the testimony of the plaintiff's alibi witnesses. On November 16, 1979, the Grand Jury dismissed the charges against the plaintiff.

The plaintiff then commenced the instant action to recover damages for false arrest and false imprisonment, and for malicious prosecution. The plaintiff prevailed before the jury, on both causes of action. The jury awarded him a verdict of $50,000 on his cause of action for false arrest and false imprisonment, and $500,000 on his cause of action for malicious prosecution.

The Town of Harrison has appealed, contending primarily that the case should not have been submitted to the jury because, as a matter of law, there was probable cause for the arrest and prosecution of the plaintiff and no showing that the arresting officer's warrant application contained false statements. We agree and, thus, we reverse and dismiss the action.

The facts of the case are as follows:

On August 8, 1979, at approximately 10:30 P.M., the complainant was raped. The complainant told the police officers who responded to her complaint, that, while walking to a friend's house, she was chased, forced into a car and raped. She described her assailant as a heavy white male with a large build, broad shoulders and brown medium length hair covering his ears, wearing a white T-shirt and dungarees. She

gave his age as approximately 35 to 40 years old. The complainant described his car as a tan, four-door sedan, possibly a Ford LTD.

The following day, Detective Peter Maxwell of the Police Department of the Town of Harrison interviewed the complainant, who further described her attacker as extremely well built, as though he was a weight lifter. She also indicated that the shirt he was wearing was a tank top.

Based on all of the information obtained from the victim, Detective Maxwell put together an array of 12 photographs, including a picture of the plaintiff, 19-year-old Peter Gisondi. According to Detective Maxwell, Gisondi's picture was included because he frequented the area where the rape occurred, he had a large frame, and was known to wear a tank top. When shown the photographs two days after the rape, the complainant identified the plaintiff as her assailant, saying she was sure it was he.

On August 11, 1979, Detective Maxwell accompanied the complainant to a local Ford dealership in an attempt to ascertain what type of car her attacker had been driving. Upon pulling into the parking lot of the dealership, the complainant pointed out a Ford Thunderbird as resembling the assailant's car.

A Ford Thunderbird was registered to the plaintiff's father's company, and was kept at the Gisondi residence. On August 22, 1979, Detective Maxwell submitted an affidavit in support of an application for a search warrant for the car. In his affidavit, he averred that the complainant had selected the plaintiff's picture from an array of photographs of 12 men all "closely resembling" her description of the assailant. Further, he attested that the complainant had stated that the Ford Thunderbird resembled her assailant's car. And finally, he noted that the plaintiff had access to such a car, which was owned by his father's company and maintained at his home.

On the back of Detective Maxwell's affidavit, the Town Justice issuing the warrant also wrote, "[t]he alleged rape victim, subsequent to having identified the vehicle, by type, as previously attested, further identified the specific vehicle while it was parked at the defendant's home".

An arrest warrant for the plaintiff, and a search warrant for the car were then issued on August 22, 1979, and executed on August 23, 1979. The plaintiff was released the next day, after bail had been posted.

Gisondi protested his innocence and produced a car inspection sticker issued in the vicinity of West Dennis, Massachusetts, on the day of the rape.

On August 28 and 31, 1979, a felony hearing was held at which the complainant identified Gisondi as her assailant, and two of Gisondi's friends testified as alibi witnesses on his behalf. At the conclusion of the hearing, the plaintiff was held for Grand Jury action.

On September 21, 1979, in pursuance of his investigation of the crime, Detective Maxwell traveled to West Dennis, Massachusetts, to ascertain the plaintiff's whereabouts on the date of the rape. He spoke to the owner of the service station which had inspected Gisondi's car, who recalled inspecting it on August 8, 1979, sometime between 11:00 A.M. and 12:00 noon. The owner said that he was 99% sure that it was the plaintiff who brought the car in for inspection that day.

Detective Maxwell noted that the trip between Harrison, New York, and West Dennis, Massachusetts, took him approximately four hours and 15 minutes, traveling at a speed of approximately 55 miles per hour.

Another detective had contacted the Massachusetts Registry of Motor Vehicles and was advised that the plaintiff had taken a road test for a Massachusetts driver's license on August 9, 1979, at 1:00 P.M.

On November 16, 1979, a Grand Jury dismissed the case against the plaintiff.

As noted earlier, in February 1980, the plaintiff commenced this action to recover damages for false arrest and false imprisonment, and malicious prosecution.

Our reasons for reversing the judgment and dismissing the action are set forth below.

### THE FALSE ARREST CLAIM

In *Ross v Village of Wappingers Falls* (62 AD2d 892, 896), this court wrote: "An arresting officer in the ordinary course of events may rely upon the fact that he possesses a judicially issued arrest warrant and thus be insulated from a claim of false imprisonment. However, he may not so insulate himself from such a claim where he has personally procured the issuance of the warrant based upon his own false and unsubstantiated statements."

Gisondi argues that Detective Maxwell made false state-

ments in his warrant application when he averred that the plaintiff had access to a Ford Thunderbird garaged at the Gisondi residence, and that he falsely represented that the victim had identified her assailant's car as being exactly like the Gisondi Thunderbird. Further, the plaintiff argues that Detective Maxwell misrepresented the facts when he averred that the photographic array contained pictures of men "closely" resembling the victim's description of her assailant, and failed to advise the Town Justice of the discrepancy between the age of the plaintiff, 19, and the victim's approximation of 35 to 40 as the age of her assailant. Finally, the plaintiff argues that Detective Maxwell failed to advise the Town Justice that the victim claimed to have scratched her assailant, and that he had never observed such marks on the plaintiff.

These contentions are unavailing, as they do not indicate that Detective Maxwell made any false and unsubstantiated statements to obtain the warrant. The plaintiff may not have owned the vehicle, but its location at his residence indicates that he did have access to it. Moreover, there is no merit to the contention that Detective Maxwell's affidavit falsely described the victim's identification of the car. Although the vehicle originally described the car as a tan, four-door sedan, possibly a Ford LTD, she altered her description upon viewing a Ford Thunderbird, and more specifically she identified the vehicle itself while it was parked at the plaintiff's home.

In arguing that Maxwell misrepresented that the men in the photographic array closely resembled the victim's description of the assailant, thus concealing the age discrepancy, the plaintiff loses sight of the more significant fact that the victim selected his photograph from the array within two days of the rape, stating she was sure it was he. In any case, a review of the array indicates that almost all of the men, including the plaintiff, look to be about the same age, thus negating any claim of suggestiveness in the array based upon the age discrepancy.

Finally, the plaintiff's contention that Detective Maxwell failed to advise the Town Justice of the lack of scratch marks is of no significance since there is no indication that he even observed the plaintiff until after the arrest warrant was executed.

Therefore, we conclude that Detective Maxwell did not supply false evidence to support the issuance of the warrant.

Consequently, the cause of action to recover damages for false arrest and imprisonment should not have been submitted to the jury since the arrest was effected pursuant to a valid warrant and was therefore privileged *(Boose v City of Rochester,* 71 AD2d 59, 67).

### THE MALICIOUS PROSECUTION CLAIM

In order to succeed on his cause of action to recover damages for malicious prosecution, among other things, the plaintiff was required to establish a lack of probable cause for the criminal proceeding *(Broughton v State of New York,* 37 NY2d 451, 457, *cert denied sub nom. Schanbarger v Kellog,* 423 US 929).

Since the plaintiff in the case at bar was held by a Town Justice after a felony hearing on the charge, a prima facie case of probable cause for the prosecution was established, and the plaintiff had to demonstrate fraud, perjury or the withholding of evidence in order to overcome this presumption of probable cause *(see, Hornstein v Wolf,* 109 AD2d 129, 132, *affd* 67 NY2d 721).

In our view, the evidence which the plaintiff presented to rebut this presumption was insufficient as a matter of law.

As noted by us earlier in disposing of his false arrest and imprisonment claims, the plaintiff's allegations that Detective Maxwell made false statements are without merit. There is no proof that any of the statements made by Detective Maxwell in support of the warrant were false or unsubstantiated, or that he withheld any evidence.

The plaintiff further argues that had Detective Maxwell made a proper investigation, he would have found that he had the wrong man, thus implying that Maxwell suppressed evidence. This contention is also without merit.

"[T]he mere assertion of an alibi, and even the failure to investigate such an alibi to plaintiff's satisfaction, does not overcome the existence of probable cause to prosecute" *(Brown v City of New York,* 92 AD2d 15, 18, *affd* 60 NY2d 893). In any event, Gisondi's alibi was far from airtight. It is possible that he could have been in West Dennis, Massachusetts, having his car inspected at noon, and then made the 4- to 5-hour trip to Harrison, New York, and arrived well before 10:30 P.M., the time of the rape.

At worst, Detective Maxwell's failure to make a more thorough investigation of the plaintiff's claims of innocence

displays, perhaps, "a closed mindedness and even possibly negligent police procedure. This closed mindedness and/or negligence does not translate, however, into an inference of suppression of evidence" *(Lee v City of Mount Vernon,* 68 AD2d 902, 903, *affd* 49 NY2d 1041).

Moreover, the plaintiff's two alibi witnesses themselves appeared at the felony hearing, yet the plaintiff was still held for Grand Jury action.

All of the circumstances of this case indicate that the actions of the defendant's employees in arresting and prosecuting the plaintiff were supported by probable cause as a matter of law, and as such, it was error for the trial court to submit this case to the jury.

Under the facts disclosed in the record before us, allowing the plaintiff's causes of action would have an unjustifiable chilling effect upon law enforcement authorities *(see, Reeves v Manufacturers Hanover Trust Co.,* 117 AD2d 789).

Accordingly, the judgment appealed from should be reversed, on the law, and the action dismissed.

BRACKEN, J. P., WEINSTEIN and RUBIN, JJ., concur.

Justice Rubin has been substituted for the late Justice Gibbons *(see,* 22 NYCRR 670.2 [c]).

Ordered that the judgment of the Supreme Court, Westchester County, entered March 12, 1984, is reversed, on the law, without costs or disbursements, and the action is dismissed.