[No. 24501-5-I.   Division One.   September 23, 1991.]

GEORGE DEVER, *Appellant*, v. DENNIS FOWLER, ET AL, *Respondents*.

*David Allen, Richard A. Hansen, Donald Roy Roistacher,* and *Allen & Hansen P.S.,* for appellant.

*Thomas D. Frey, Anne M. Bremner,* and *Stafford Frey Cooper & Stewart,* for respondents.

WEBSTER, A.C.J. — George Dever asserted claims of malicious prosecution, negligent investigation, and civil rights violations against the defendants (hereinafter Fowler). Dever appeals the jury's verdict returned against him and asserts several instructional errors, among them that the trial court erroneously defined malice. He also asserts that the trial court erred in dismissing his negligent investigation claim, and denying discovery of prosecutors' notes and memoranda. We reverse and remand.

## FACTS

On December 19, 1982, a fire broke out in the basement of the Immaculate Conception Church (ICC) during mass. The fire caused extensive damage and resulted in the death of one parishioner. The Seattle Fire Department suspected arson and opened an investigation. After 2 months, the investigation was inactivated.

George Dever, an active member of the ICC, was in the choir box just before the fire broke out. Dennis Fowler is an investigator with the Seattle Fire Department. In July of 1983, 6½ months after the fire, the Seattle Fire Department assigned Fowler to the ICC case and instructed him to reopen the investigation. Dever became an arson suspect during this second investigation.

The facts are highly disputed. Fowler began to focus on Dever as a suspect when he discovered Dever's call to 911 to report the fire. When the receptionist who took Dever's call asked what was burning, he replied, "some hay in the basement, the crib scene . . . not much — but some." This suggested to Fowler that Dever knew where the fire originated. Fowler also learned that Dever's call was received only 12 seconds after another call from the church rectory made by Clint Richardson. Dever stated that he heard calls of "fire" just as he was leaving the church. Fowler estimated that it would have taken Dever at least 1 minute to run from the church's choir box to his home. Based on these facts and others, Fowler hypothesized that Dever left the church before anyone else knew about the fire.

Dever was charged with first degree arson and first degree manslaughter on June 14, 1984. Fowler testified that he gave Dever's file to the prosecuting attorney's office just before the charges were filed to have it looked over, but that he did not want charges to be filed at that point. Chief prosecuting attorney Ron Clark testified that Fowler was advocating that charges be filed against Dever. Clark told deputy prosecuting attorney Ruth Robinson to draft a certificate of probable cause, but that he wanted to review Dever's case before filing charges. Robinson prepared the certificate of probable cause, but was not present when charges were filed against Dever. Another prosecuting attorney signed the document charging Dever. Dever intended to show that Fowler exerted undue influence on certain prosecutors to file charges against Dever.

After criminal charges were filed against Dever, Dever's attorney conducted an independent investigation and sub-

mitted several witness statements to the King County prosecuting attorney's office. As a result, the charges against Dever were dismissed on July 24, 1984. On May 6, 1985, Dever filed this action against Fowler and others, alleging civil rights violations, malicious prosecution, and negligent investigation.

One of Dever's expert witnesses was Dave Boerner, a professor at the University of Puget Sound law school and a former chief criminal prosecutor for the King County prosecuting attorney's office. Boerner testified that probable cause to charge Dever would not have existed unless all other suspects were eliminated and only Dever knew the fire originated in the straw. Dever alleged that Fowler did not conduct thorough or proper interviews, failed to interview certain individuals who possessed information that could have exculpated Dever, and failed to investigate whether other parishioners knew or suspected the hay was burning. Dever contends that Fowler therefore eliminated suspects who should not have been eliminated and omitted other important exculpatory evidence. Dever submitted witness statements indicating that several parishioners believed the hay had caught fire.

On October 19, 1988, the jury returned a verdict in favor of Fowler on the civil rights and malicious prosecution claims, but was unable to reach a decision on the negligent investigation claim. After declaring a mistrial as to the negligent investigation claim, the trial court granted Fowler's motion to dismiss, concluding that Dever failed to state a claim upon which relief could be granted.

## DISCUSSION

We first address whether the trial court's instruction 10 erroneously defined malice and deprived Dever of a fair trial. The instruction set forth the five elements of malicious prosecution and contained definitions of "probable cause" and "malice". Instruction 10 defined malice as follows:

> "Malice" as used in this instruction means personal hatred or ill will, any improper or sinister purpose or any reckless disregard of the rights of the person *which is inconsistent with good faith or the purpose to further the ends of justice.*

(Italics ours.) Dever contends that including the italicized portion in the definition of malice was prejudicial error. He points out that the italicized language does not exist in *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942), and that Fowler's attorney incorrectly represented that it did. The "inconsistent with good faith" language comes, instead, from *Waring v. Hudspeth*, 75 Wash. 534, 538, 135 P. 222 (1913). The only other case containing the above italicized language is *Saunders v. First Nat'l Bank of Kelso*, 85 Wash. 125, 147 P. 894 (1915). Although *Waring* and *Saunders* are still good authority in the sense that they have not been explicitly overruled or distinguished, subsequent malicious prosecution cases have abandoned the "inconsistent with good faith" language.

Fowler asserts that *Peasley* and its progeny nevertheless indicate approval of the language found in *Waring*. The cases following *Peasley* all quote a particular excerpt from *Peasley*. The excerpt contains the statement, "We have recognized and applied this broader conception of *the term* in *Waring v. Hudspeth*". (Italics ours.) *Bender v. Seattle*, 99 Wn.2d 582, 594, 664 P.2d 492 (1983) (quoting *Peasley*, at 502); *Peterson v. Littlejohn*, 56 Wn. App. 1, 10, 781 P.2d 1329 (1989) (quoting *Peasley*, at 502); *Banks v. Nordstrom, Inc.*, 57 Wn. App. 251, 267, 787 P.2d 953 (quoting *Peasley*, at 502), *review denied*, 115 Wn.2d 1008 (1990). Although it is not clear what "term" the *Peasley* court was referring to, we believe the gist of the court's holding is that malice may be inferred from the lack of probable cause and from proof that the investigation was undertaken with reckless disregard of the plaintiff's rights. *See Peasley*, at 502; *Waring*, at 538-39. Thus, Fowler's assertion that *Peasley* and subsequent malicious prosecution cases show approval of the "inconsistent with good faith" language is unsupported.

Dever contends that the addition of the "inconsistent with good faith" language in instruction 10 essentially eliminated the alternative of establishing malice by proof that the prosecution was undertaken "in reckless disregard of the rights of

the plaintiff." *See, e.g., Bender*, at 594. Since *Peasley*, the Washington Supreme Court has held that the element of "malice" in a malicious prosecution action may be established by proving that "the prosecution complained of was undertaken from improper or wrongful motives *or* in reckless disregard of the rights of the plaintiff." (Italics ours.) *See, e.g., Bender*, at 594 (citing *Peasley*, at 502). Dever contends that these two definitions of malice reflect two distinct categories of malicious prosecution actions. He asserts that malice based on improper motives applies to situations in which the plaintiff and defendant had some prior association and the defendant is a private party who either filed a misdemeanor complaint against the plaintiff or reported to the police that the plaintiff committed a felony. In contrast, he asserts, malice based on reckless disregard generally applies to situations in which the defendant had no prior association with the plaintiff and the prosecution was initiated by law enforcement officers.

■ The language, "inconsistent with good faith or the purpose to further the ends of justice", found in instruction 10 is synonymous with improper motive. A reasonable juror could have believed that "reckless disregard of the rights of the plaintiff" was insufficient proof of malice and that some proof of improper motive was required. *See Bender*, at 594. If a juror believed the instruction required proof of some improper motive, he could not infer malice based on reckless disregard — a result that contravenes *Peasley. Peasley*, at 502. *See also Turngren v. King Cy.*, 104 Wn.2d 293, 305, 705 P.2d 258 (1985). We, therefore, conclude that the "inconsistent with good faith" language was error was a matter of law.

■ Fowler contends that even if instruction 10 incorrectly stated the law, the error was harmless. He asserts that any error was cured by instruction 13, which states that malice "may be satisfied by proving either that the prosecution complained of was undertaken either for improper or wrongful motives or with a reckless disregard of the rights of the plaintiffs." Washington courts have held that incon-

sistent decisional standards require reversal. *Renner v. Nestor*, 33 Wn. App. 546, 550, 656 P.2d 533 (1983). Since instructions 10 and 13 were irreconcilable, the incorrect statement of the law in instruction 10 was not harmless.

Fowler also contends that Dever failed to preserve his objection to the definition of malice in instruction 10. CR 51(f) provides that counsel shall be given an opportunity to object to the court's instructions, and that "[t]he objector shall state distinctly the matter to which he objects and the grounds of his objection". The purpose of this rule is to apprise the trial court, when it has before it all the evidence and legal arguments, the exact points of law and reasons upon which counsel claims the instruction is in error, so that unnecessary appeals and retrials may be avoided. *Stewart v. State*, 92 Wn.2d 285, 298, 597 P.2d 101 (1979); *Smith v. Shannon*, 100 Wn.2d 26, 666 P.2d 351 (1983). A basis for challenging an instruction which was not urged at the time of trial cannot be considered for the first time on appeal. *Higgins v. East Vly. Sch. Dist.*, 41 Wn. App. 281, 283, 704 P.2d 630 (1985); *Haslund v. Seattle*, 86 Wn.2d 607, 616, 547 P.2d 1221 (1976).

Dever's attorney objected to instruction 10, stating that he disagreed with the language, "inconsistent with good faith", because he had not seen that language in any of the opinions. After Fowler's attorney incorrectly stated that the language came from *Peasley*, Dever's attorney pointed out that malice was not defined that way in *Peasley*. The court acknowledged the objection and instructed Dever's attorney to proceed. Dever's counsel did not offer any further explanation *why* the disputed language was improper. Dever's counsel further objected to instruction 10 on the grounds that the disputed language made instruction 10 conflict with instruction 13. Instruction 13 states:

> The requirement that malice be shown as part of the plaintiff's case in an action for malicious prosecution may be satisfied by proving either that the prosecution complained of was undertaken *either for improper or wrongful motives or with reckless disregard of the rights of the plaintiffs.*

(Italics ours.)[1] Moreover, when Dever moved for a new trial and made the exact arguments that he now presents on appeal, the trial judge stated that he understood the nature of Dever's objection to instruction 10 when the objection was initially made, but that he believed the instruction properly stated the law and did not conflict with any other instructions. Report of Proceedings, at 24 (Nov. 8, 1988).

■ We conclude that Dever's objection to instruction 10 was preserved for appellate review. Our holding rests on the fact that the trial court was aware of the inconsistency between instructions 10 and 13, and stated that it understood the nature of Dever's objection when it was first made.[2]

■■ We next address whether the court erred in failing to give an instruction defining "knowingly". Dever contends that the trial court's refusal to define knowingly prejudiced his civil rights claim. Under the court's jury instruction, Dever was required to prove as an element of a civil rights violation one of the following:

A. Defendant Fowler subjected the prosecutor to unreasonable pressure to file the case; or,
B. Defendant Fowler knowingly withheld relevant information from the prosecutor's office, which information, if supplied, would have resulted in charges not being filed; or,
C. Defendant Fowler knowingly supplied false information which resulted in charges being filed, which would otherwise not have been filed.

---

[1]We note that the first "either" in this instruction does not belong. Instruction 10 also conflicted with the court's instruction 11, which states in part: "the plaintiff must prove that the *malicious or reckless conduct* of the defendants proximately caused the prosecutor to file a charge that would otherwise not have been filed." (Italics ours.) We note that the instruction was incorrect because "reckless disregard of the rights of the plaintiff" is one definition of malice and not an alternative to proving malice. During oral arguments, counsel for Fowler stated that Fowler's counsel at trial objected to instructions 11 and 13 on the basis that they conflicted with instruction 10. We find no record of such an objection. However, any objection would have further apprised the trial court that the definitions of malice in the court's instructions conflicted.

[2]Dever also claims that the court's failure to include the word "cautious" in instruction 10's definition of probable cause was a material misstatement of the law. We do not agree that the absence of the word from the definition of probable cause is a material misstatement of the law.

Instruction 19.[3] The court need not define expressions that are of ordinary understanding. *State v. VanVlack*, 53 Wn. App. 86, 89, 765 P.2d 349 (1988). Moreover, an instruction is sufficient if it permits the parties to argue their specific theories to the jury. *See VanVlack*, at 88-89. Dever argues that the absence of an instruction defining "knowingly" insulated Fowler from liability so long as Fowler testified that he believed Dever was guilty. This argument is meritless. The trial court's refusal to give the instruction does not constitute a reversible error.[4]

We next address whether the court erred in dismissing Dever's negligent investigation claim. The trial court dismissed Dever's negligent investigation claim pursuant to CR 12(b)(6) on grounds that it failed to state a claim on which relief could be granted. On a motion to dismiss pursuant to CR 12(b)(6), the trial court must accept all allegations in the complaint as true and must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief." *Corrigal v. Ball & Dodd Funeral Home*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978). In *Bender*, the court expressly overruled portions of two Court of Appeals decisions that extended the doctrine of discretionary governmental immunity to public officers performing their duties. *Bender*, at 589-90 (overruling *Clipse v. Gillis*, 20 Wn. App. 691, 582 P.2d 555 (1978) and *Moloney v. Tribune Pub'g Co.*, 26 Wn. App. 357, 613 P.2d 1179, *review denied*, 94 Wn.2d 1014 (1980)). The *Bender* court held that discretionary governmental immunity was a "narrow exception" to the general rule of governmental tort liability, and that it only applied to high level policy-making decisions. *Bender*, at 589-90. *See also Chambers-Castanes v. King Cy.*,

---

[3]Dever's counsel contends that his instruction was taken from *Smiddy v. Varney*, 665 F.2d 261 (9th Cir. 1981), *cert. denied*, 459 U.S. 829 (1982). However, we do not find support for this portion of the court's instruction in *Smiddy*.

[4]Nonetheless, we believe that an instruction defining knowingly might have assisted the jury in evaluating Dever's civil rights claims.

100 Wn.2d 275, 281-83, 669 P.2d 451, 39 A.L.R.4th 671 (1983). Dever's argument that *Bender* created a cause of action for negligent investigation is meritless. Furthermore, although no Washington case has expressly denied a cause of action for negligent investigation, other jurisdictions have held that no such action exists. *See, e.g., Smith v. State*, 324 N.W.2d 299, 302 (Iowa 1982); *Drake v. State*, 126 Misc. 2d 309, 482 N.Y.S.2d 208, 210 (Ct. Cl. 1984); *Boose v. Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 744 (N.Y. App. Div. 1979); *Gisondi v. Harrison*, 120 A.D.2d 48, 507 N.Y.S.2d 419, 423 (1986). The reason courts have refused to create a cause of action for negligent investigation is that holding investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect upon law enforcement. *Smith*, 324 N.W.2d at 302; *Gisondi*, 507 N.Y.S.2d at 423.

Dever claims that even if no cause of action for negligent investigation exists, the facts alleged in his complaint state a claim based on Fowler's violation of a special duty owed to Dever. He asserts that because of the alleged special duty, his claim is not defeated by the public duty doctrine. The general rule is that

> a public officer is answerable to private persons who sustain special damage resulting from the negligent performance of the officer's imperative or ministerial duties, unless the wrong done is a violation of a duty which he owes solely to the public.

*Garnett v. Bellevue*, 59 Wn. App. 281, 286, 796 P.2d 782 (1990) (quoting 5 S. Spieser, *American Law of Torts* § 17:65, at 453 (1988)), *review denied*, 116 Wn.2d 1028 (1991). In *Garnett*, the court held that the Legislature's abolition of sovereign immunity (RCW 4.96.010) did not abrogate the public duty doctrine. *Garnett*, at 285.

In *Bailey v. Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257, 753 P.2d 523 (1987), the court identified the "situations in which a governmental agency acquires a special duty of care owed to a particular plaintiff or a limited class of potential plaintiffs, rather than the general duty of care

owed to the public at large." *Bailey*, at 268. Although Dever indicates that Fowler entered into a special relationship with him, giving rise to a special duty, he failed to identify the particular duty owed. He does not place himself in a class of persons that any statute was designed to protect, or show that he relied on "explicit assurances given by [Fowler] or assurances inherent in a duty vested in a governmental entity". *Bailey*, at 268. Dever has not identified the alleged special duty with any factual particulars in his complaint. Therefore, the trial court properly dismissed his claim for negligent investigation.

Lastly, we address whether the court abused its discretion in denying discovery of files, records, notes, and memoranda generated in the State's criminal prosecution of Dever. The King County Prosecuting Attorney moved for an in camera review of the documents, a protective order denying discovery, and order quashing Dever's subpoena duces tecum, arguing that the requested documents reflected the mental impressions, conclusions, opinions, and legal theories of deputy prosecuting attorneys. The trial court conducted an in camera review and granted the motion. Because we are unable to determine from the record what standard of law the trial court applied in making its ruling, we are unable to determine whether the trial court abused its discretion. We decline to conduct a de novo review of each document to determine whether it should be disclosed, especially when the King County Prosecutor was not made a party to this appeal.[5] Instead, we remand and instruct the trial court to re-examine the documents, applying the standard set forth below.

Former rule 26(b)(3) of both the federal and Washington rules of civil procedure, known as the "work product" doctrine, provides that

a party may obtain discovery of documents . . . *prepared in anticipation of litigation or for trial by or for another party* . . .

---

[5]Only the King County Prosecuting Attorney has standing to assert work product protection for documents prepared by prosecuting attorneys.

only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Italics ours.) *See Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). In *Pappas v. Holloway,* 114 Wn.2d 198, 787 P.2d 30 (1990), the court reiterated the rationale behind the work product doctrine:

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Pappas,* at 209-10 (quoting *Hickman,* at 511). Based on "the underlying purposes served by the work-product doctrine", the *Pappas* court held that the protection provided by the work product doctrine does not cease once the litigation for which the documents were prepared has terminated. *Pappas,* at 210.

Dever contends that the work product doctrine does not apply to documents prepared by nonparty witnesses. The Washington Supreme Court has not decided whether work product protection extends to third parties, who are not parties to the present litigation. The language found in former CR 26(b)(3) does not limit work product protection to parties to the instant litigation. We conclude, "based on the underlying purposes served by the work-product doctrine", that protection under the work product doctrine extends to documents prepared in anticipation of *any* litigation, regardless of whether the party from whom it is requested is a party in the present litigation. Thus, the work product rule extends to the documents prepared by the prosecuting attorneys.

Documents protected by the work product rule are nevertheless discoverable if the party seeking discovery shows substantial need of the materials and is unable to obtain the substantial equivalent of the materials by other means. Former CR 26(b)(3).

> Whether a party has shown a substantial need within the meaning of CR 26(b)(3) is ordinarily vested in the sound discretion of the trial judge, who should look at the facts and circumstances of each case in arriving at an ultimate conclusion. *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 401, 706 P.2d 212 (1985).

*Pappas*, at 210.

The documents subpoenaed in the instant case consist of letters from Robinson to Clark assessing the State's case against Dever. They also contain Clark's mental impressions and opinions on evidentiary matters, the chances of prevailing at trial, and the problems with the manner in which the investigation was conducted. Some of the materials sought to be discovered may contain information directly pertinent to Dever's malicious prosecution and civil rights claims. *See Pappas*, at 212; *Bender v. Seattle*, 99 Wn.2d at 594-97. We believe that Dever may not have had an opportunity to obtain substantially equivalent information by deposing the prosecuting attorneys who were involved in the State's case against him with respect to some of the documents. Since the prosecuting attorneys are not parties in the present case, they do not have any clear motive to misrepresent the information contained in the documents. *See Heidebrink v. Moriwaki*, 104 Wn.2d 392, 401, 706 P.2d 212 (1985) (clearest case for ordering production is when crucial information is in the exclusive control of the opposing party). This would not hold true, however, with respect to a prosecutor who is a relative of Fowler, or who has a close, personal relationship with him, for example.

On remand, the trial court is instructed to reexamine the documents to determine whether discovery should be permitted. If the court orders discovery of documents, then the mental impressions, opinions, and legal theories that are

not vital to proving Dever's case shall be expurgated from the discoverable documents.[6] Former CR 26(b)(3).

The judgment is reversed and remanded for a new trial on Dever's malicious prosecution claim. Dever's civil rights claim shall be retried on remand only if the trial court determines that the prosecutors' notes and memoranda contain information directly pertinent to Dever's civil rights claim and the court determines that a reasonable juror could conclude with the addition of the newly discovered evidence that Dever should prevail on his civil rights claim.

COLEMAN, J., concurs.

FORREST, J. (concurring) — I agree with the majority that Dever has not properly preserved his claim of error as to the trial court's in limine ruling limiting his inquiry into the relationship between Fowler and a member of the prosecuting attorney's office. Since the matter will undoubtedly arise in the event of a retrial, I deem it appropriate to state my view as to the merits to forestall another appeal on this issue.

A crucial issue on liability is whether Fowler neutrally laid the facts before the prosecutor or whether he actively promoted immediate filing. Accordingly, the relationship between Fowler and the deputy prosecutor handling the matter is of vital importance, especially in view of the uncertainty as to the details of the filing. In my view it would be an abuse of discretion to grant a motion in limine prohibiting testimony as to such relationship.

After modification, further reconsideration denied December 20, 1991.

Review denied at 118 Wn.2d 1028 (1992).

---

[6]If Ron Clark refused to answer deposition questions regarding Fowler's presentation or omission of relevant facts or the existence or lack of probable cause, as argued by Dever, then Dever could have sought a motion to compel an answer.