# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERESA ROGERSON, <br><br> Appellant, <br><br> v. <br><br> STATE OF WASHINGTON and CITY OF SEATTLE, a municipal corporation, <br><br> Respondents. | DIVISION ONE <br><br> No. 84646-9-I <br><br> UNPUBLISHED OPINION |

DWYER, J. — Teresa Rogerson appeals from the dismissal of her amended complaint against the City of Seattle (the City), in which she alleges negligence by Seattle Police Department (SPD) officers following her report of rape. Specifically, Rogerson alleges that the City's police officers breached a duty to exercise reasonable care by not promptly submitting for testing the forensic evidence obtained when she underwent a sexual assault examination and by not taking further steps to identify her assailant. In granting the City's motion for summary judgment, the superior court ruled that "there is no claim for negligent investigation" in our state.

Indeed, Washington courts of appeals have consistently held that negligent investigation by law enforcement is a noncognizable claim. Our Supreme Court has repeatedly declined invitations to opine differently, thus leaving undisturbed that decisional authority. In dismissing Rogerson's amended complaint, the superior court ruled in accordance with appellate decisional

authority. We can find no error in the court so ruling. Rogerson's claims, as pleaded, constitute negligent investigation claims. Accordingly, we affirm the superior court's dismissal of her amended complaint.

I

In 2007, Teresa Rogerson was forcibly abducted from a downtown Seattle sidewalk and violently raped by a man she did not know, who brandished a screwdriver and threatened to kill her. During the incident, an identification card fell out of the man's clothing. Rogerson saw the name "John Lay" on the identification card. The man told Rogerson that he knew she "live[d] at Angeline's," a nearby homeless shelter for women. He told her that if she reported the rape, he would find and kill her.

Rogerson nevertheless promptly reported the rape to her caseworker at the women's shelter. An SPD officer thereafter arrived at the shelter in response to Rogerson's 911 call. Rogerson recounted the incident to the officer and gave him a detailed description of her assailant. She told the officer that, while being held against her will, she had observed the assailant's "prison license," which indicated that his name was "John Lay." The officer asked Rogerson if she would consent to a sexual assault examination, and she agreed. The officer then drove Rogerson to Harborview Medical Center, where she endured an hours-long painful and invasive examination to enable the collection of forensic evidence. During the examination, Rogerson was "tearful, afraid and despondent." Despite "the care and concern" of the sexual assault nurse examiner, Rogerson "felt as if she was reliving the rape all over again."

2

An SPD detective was thereafter assigned to conduct a follow up investigation of the case. When the assigned detective entered the name "John Lay" into a criminal history database, he discovered an arrest history report for a "Johnny Lay Jr.," whose identifiers matched Rogerson's description of her assailant. The database indicated that "Johnny Lay Jr." was a registered sex offender on active Department of Corrections (DOC) supervision. Notwithstanding the discovery of this information, the detective at no point created a "photo montage" for identification purposes. Nor did he contact the assigned DOC officer to attempt to determine the whereabouts of "Johnny Lay Jr."

A few days after the sexual assault examination, the assigned detective contacted Rogerson by phone to discuss the case and to schedule a follow up interview. According to Rogerson, she repeatedly inquired during the call as to whether the sexual assault kit obtained from the examination had been submitting for testing. The assigned detective assured her that "'the rape kit will be tested.'" He told her, "'[D]on't worry about [the rape kit],'" and that "'it's being taken care of.'" This proved untrue. In fact, the detective closed Rogerson's case as "inactive" within a few weeks of her report, and the sexual assault kit was not submitted for testing until June 2016, nearly a decade later.

In March 2018, SPD received notice from the Washington State Crime Patrol Laboratory that the DNA obtained from Rogerson's sexual assault kit matched that of "Johnny Lay." A different SPD detective, who was then assigned

to the case, contacted and interviewed Rogerson. In October 2020, a jury convicted Lay of rape in the second degree for the rape of Rogerson.

Rogerson thereafter filed an amended complaint against the City alleging negligence by SPD police officers following her report of the rape.[1] Rogerson alleged therein that, despite an express assurance from the assigned detective that her sexual assault kit would be promptly tested, the forensic evidence was not submitted for testing for "over a decade." She further alleged that, had the sexual assault kit been promptly submitted for testing, her assailant would have been easily identified. Instead, Rogerson asserted, she "lived in terror, fear, anxiety and psychological distress for over a decade," "constantly looking over her shoulder—worrying that the man who raped her would find her and kill her as he had threatened to during the rape."

Specifically, Rogerson pleaded that SPD officers had breached a duty of care owed to her by (1) failing to submit the forensic evidence for testing for over a decade, (2) failing to upload the DNA profile thus obtained into a criminal database, (3) failing to create and provide to her a "photo montage" that included the suspect, (4) failing to contact both the suspect whom she had identified and the suspect's probation officer, and (5) failing to further contact Rogerson following her report of the rape. She alleged that the officers had "failed to take steps to positively identify the rape suspect [whom she] had identified by name" and had "failed to investigate her rape case," thus breaching a duty to refrain

---

[1] Rogerson additionally asserted a negligence claim against the State, claiming that DOC had not taken reasonable precautions to prevent foreseeable harm while Lay was subject to supervision. A stipulated judgment against the State was entered on October 25, 2022.

from causing her foreseeable harm. Rogerson further asserted a claim for negligent infliction of emotional distress, alleging that SPD officers breached a duty of care owed to her by failing to promptly submit the sexual assault kit for testing after assuring her that such action would be taken.

The City thereafter filed a motion for summary judgment seeking dismissal of the amended complaint. The City asserted, in part, that Rogerson's claims constituted noncognizable negligent investigation claims. In response to the City's motion, Rogerson replied that "[i]t is undisputed that [the assigned detective's] 'investigation' into the rape . . . was minimal. A conservative estimate of the time it took [him] to complete the actions on [Rogerson's] case is less than an hour." She additionally submitted declarations and deposition testimony of two experts who opined regarding the actions that a "reasonably prudent" detective would have undertaken. Rogerson asserted that, according to those experts, such a detective would have entered the suspect's name into the police department's internal database, contacted the suspect's community custody officer, and required the suspect to participate in a "line up or photo montage" for identification purposes. She alleged that the assigned detective had breached a duty of care by failing to engage in these actions.

On April 8, 2022, the superior court granted the City's motion for summary judgment. The court determined that the asserted causes of action constituted negligent investigation claims and ruled that "there is no claim for negligent investigation" in Washington. Accordingly, the court dismissed Rogerson's amended complaint.

Rogerson appeals.

II

Rogerson asserts that the superior court erred by dismissing her claims against the City as noncognizable negligent investigation claims. This is so, she avers, because her claims are not rendered unactionable in tort merely because the alleged negligent acts and omissions occurred within a police investigation. We disagree. We, along with our colleagues in Divisions Two and Three of this court, have consistently held that our state does not recognize a claim for negligent investigation. Our Supreme Court has provided no indication that this decisional authority is incorrect. Accordingly, we can find no error in the superior court's decision to rule in accordance with that authority. Having determined that the asserted causes of action constitute negligent investigation claims, we conclude that the superior court properly dismissed Rogerson's amended complaint.

We review de novo a trial court's decision on summary judgment, engaging in the same inquiry as did the trial court. Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). The moving party bears the burden of demonstrating that there is no disputed issue of material fact. Haley, 25 Wn. App. 2d at 216. "All reasonable inferences must be considered in the light most favorable to the nonmoving party, and summary judgment may be granted only if a reasonable person could reach but one

conclusion." Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 954, 247 P.3d 18 (2011).

"A claim for negligent investigation is not cognizable under Washington law."[2] Fondren v. Klickitat County, 79 Wn. App. 850, 862, 905 P.2d 928 (1995). We have repeatedly so held. Janaszak v. State, 173 Wn. App. 703, 725, 297 P.3d 723 (2013); Stansfield v. Douglas County, 107 Wn. App. 1, 12-13, 27 P.3d 205, review denied, 145 Wn.2d 1009 (2001); Laymon v. Dep't of Nat. Res., 99 Wn. App. 518, 530, 994 P.2d 232 (2000); Pettis v. State, 98 Wn. App. 553, 558-59, 990 P.2d 453 (1999); Corbally v. Kennewick Sch. Dist., 94 Wn. App. 736, 740, 973 P.2d 1074 (1999); Fondren, 79 Wn. App. at 862; Donaldson v. City of Seattle, 65 Wn. App. 661, 671, 831 P.2d 1098 (1992), review dismissed, 120 Wn.2d 1031, 847 P.2d 481 (1993); Dever v. Fowler, 63 Wn. App. 35, 44-45, 816 P.2d 1237, 824 P.2d 1237 (1991), review denied, 118 Wn.2d 1028 (1992).

In particular, we have declined to recognize a cognizable claim for negligent investigation against law enforcement officials. Stansfield, 107 Wn. App. at 12-13; Fondren, 79 Wn. App. at 862-63; Donaldson, 65 Wn. App. at 671; Dever, 63 Wn. App. at 44-45; see also Mancini v. City of Tacoma, 196 Wn.2d

---

[2] The few circumstances in which our courts have recognized a claim for negligent investigation are inapplicable here. See, e.g., Perry v. Costco Wholesale, Inc., 123 Wn. App. 783, 795-96, 98 P.3d 1264 (2004) (recognizing that an employer's investigation "that negligently fails to discover harassment . . . may be a basis for a determination that the employer failed to take remedial action"); M.W. v. Dep't of Soc. & Health Servs., 149 Wn.2d 589, 602, 70 P.3d 954 (2003) (recognizing a claim for negligent investigation when such investigation results in placement decisions that cause harm to a child); Lambert v. Morehouse, 68 Wn. App. 500, 505, 843 P.2d 1116 (1993) (recognizing that, "[t]o the extent an employee has an employment contract requiring specific reasons for dismissal, then the employer must conduct an adequate investigation or be liable for breach of that contract"); Tyler v. Grange Ins. Ass'n, 3 Wn. App. 167, 179, 473 P.2d 193 (1970) (recognizing that an insurer's duty to act in good faith encompasses a "duty to thoroughly investigate to determine the facts upon which good faith judgment . . . can be formulated").

864, 878 n.7, 479 P.3d 656 (2021) ("To be sure, the Court of Appeals has repeatedly denied recovery for negligent police investigation.").  Our Supreme Court has declined to accept any invitation to opine differently.  Mancini, 196 Wn.2d at 869 ("We do not reach the question of whether police may separately be liable for the tort that the parties label 'negligent investigation.'").[3]  Thus, our decisional authority on this issue remains undisturbed.

We recently recognized that no Washington court had yet "set forth the precise boundaries of [the] forbidden claim" of negligent investigation.  Mancini v. City of Tacoma, No. 77531-6-I (Wash. Ct. App. May 13, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/775316.pdf, reversed, 196 Wn.2d 864 (2021).  Such a claim, we indicated, "must encompass, at minimum, assertions of negligence occurring during the authorized evidence gathering aspects of police work."  Mancini, No. 77531-6-I, slip op. at 9.  We imparted our view that, when the duty alleged to have been breached was the duty "to 'investigate better,'" "a negligence claim has become a negligent investigation claim."  Mancini, No. 77531-6-I, slip op. at 9 n.9.

Here, each of Rogerson's claims, as pleaded, encompass assertions that SPD officers were negligent in performing the evidence gathering aspects of their work.  Specifically, Rogerson alleged that the City, through the acts or omissions of its police officers, breached a duty to promptly submit the sexual assault kit for testing, to upload her assailant's DNA profile into a criminal database, to create

---

[3] In addition to explicitly declining to opine on the issue in Mancini, our Supreme Court has, as previously set forth, repeatedly denied review of appellate decisions holding that no such cognizable claim exists.  See citations, supra, at 7.

8

and provide a "photo montage" from which she could identify her assailant, to contact the suspect and his probation officer, and to make more significant attempts to contact her following her report. SPD officers, she alleged, were negligent in "fail[ing] to investigate her rape case." Each of Rogerson's claims is premised on her assertion that the assigned detective's "'investigation' into the rape . . . was minimal," as the totality of his investigative actions took "less than an hour." Rogerson's experts similarly opined that a "reasonably prudent" detective would have taken additional steps to more thoroughly investigate the rape report. In short, Rogerson's claims, as pleaded, constitute assertions that SPD officers breached a duty to "'investigate better.'" Mancini, No. 77531-6-I, slip op. at 9 n.9. Such claims constitute negligent investigation claims that, pursuant to undisturbed appellate decisional authority, are noncognizable in our state. Accordingly, the superior court did not err by dismissing Rogerson's amended complaint.[4]

---

[4] CR 56 motions are analyzed based on the actual pleadings filed and the facts actually set forth in affidavits. CR 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Unlike CR 12(b)(6) motions, CR 56 motions do not contemplate resort to hypotheticals.

As discussed above, however, Rogerson pleaded her negligent infliction of emotional distress claim as arising from the breach of a duty to promptly test the sexual assault kit following an express assurance that such action would be taken. This is, in all respects, a claim of negligence based on an assertion that police should have "'investigate[d] better.'" Mancini, No. 77531-6-I, slip op. at 9 n.9. As such, it is a noncognizable claim.

We recognize a theoretical possibility that Rogerson might have pleaded a negligent infliction of emotional distress claim differently. For instance, by relying only upon the actions of the officer to whom she first reported the rape, she might have pleaded the breach of a duty in a manner designed to (at least from the plaintiff's perspective) fall within the scope of Garnett v. City of Bellevue, 59 Wn. App. 281, 796 P.2d 782 (1990). In such a case, however, proof of proximate causation would be limited solely to injuries arising from the breach of the duty pleaded. Here, those injuries appear likely to have been more limited than the injuries claimed in Rogerson's pleadings. And, of course, if her claim had been proved, the damages rightfully awarded would be accordingly limited.

III

There is little question that Rogerson experienced significant trauma resulting from both the rape and the subsequent collection of forensic evidence—an experience she endured only in order to facilitate the identification of her assailant. Nor do we doubt Rogerson's assertion that, for more than a decade, she endured additional trauma from believing—correctly—that her assailant had not been brought to justice. Nevertheless, it was the trial court's duty to rule consistent with undisturbed appellate authority. So it is with us. At this point, after over 30 years of consistent appellate decisions, stare decisis and the Supreme Court's paramount position in the common law decisional hierarchy mandate that, if a new path is to be set forth, only our Supreme Court may identify where that path lies.

Affirmed.

_Dwyer, J._

---

By engaging in these musings, we are not holding that Rogerson in fact possesses a viable claim of this type. To be clear, we today decide this case solely with regard to the pleadings actually filed and the order of dismissal actually entered.

No. 84646-9-I/11

WE CONCUR:

_Birk, J._ _Mann, J._