# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KATHLEEN MANCINI, a single woman,<br><br>Respondent,<br><br>v.<br><br>CITY OF TACOMA, a municipal entity and political subdivision of the State of Washington; TACOMA POLICE DEPARTMENT; and RON RAMDSDELL, individually and in his official capacity as chief of Tacoma Police,<br><br>Appellant. | DIVISION ONE<br><br>No. 77531-6-I<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED:  May 13, 2019 |

DWYER, J. — Following an incident wherein Tacoma police officers raided Kathleen Mancini's home under the mistaken belief that it was home to a suspected drug dealer, Mancini filed a lawsuit against the City of Tacoma asserting several tort claims, including negligence.  At trial, the jury found in favor of Mancini on only her negligence claim.  On appeal, the City contends that Mancini's negligence claim should not have been submitted to the jury because, as tried, it was a claim for negligent investigation, which is not cognizable in Washington.  Because the evidence of negligence adduced at trial (and the theory of negligence urged on the trial court in response to the City's motion to dismiss) concerned negligence committed during the evidence gathering aspects of the police investigation, we conclude that Mancini's negligence claim, as tried, was a claim of negligent investigation, was not cognizable, and should not have

been submitted to the jury. Therefore, we reverse the judgment and remand for dismissal of Mancini's negligence claim.

I

In early December 2010, Officer Kenneth Smith of the Tacoma Police Department was in contact with a confidential informant who told him that an individual named "Matt," a white male approximately 30 years of age, was selling dealer size quantities of methamphetamine. In early January 2011, the confidential informant further claimed to have been inside Matt's apartment at 28625 16th Avenue SW, Apartment B1 in Federal Way, and to have observed Matt selling quantities of methamphetamine.

Officer Smith and his partner drove the confidential informant to the aforementioned location to have the confidential informant identify Matt's apartment in person. The apartment unit was located in an apartment complex with multiple buildings. Upon arriving at the complex, the confidential informant identified both the B1 apartment unit and a vehicle parked in the parking lot of the complex, a black four-door Dodge Charger, as where the informant had observed Matt with dealer size quantities of methamphetamines. The confidential informant further described Matt's apartment to Officer Smith as dirty and gross and explained that Matt had rented the apartment in his mother's name so that no one could figure out where he was.

In addition to having the confidential informant verify the location of Matt's apartment in person, Officer Smith also attempted to verify the confidential informant's information by checking it on several online databases. As a result of

these searches, Officer Smith learned that the apartment identified by the confidential informant was rented by Kathleen Mancini. Officer Smith believed that Mancini was Matt's mother,[1] and decided to obtain a search warrant for the apartment identified by the confidential informant. He did not perform any surveillance on the apartment or the vehicle before seeking a warrant, nor did he attempt to set up a controlled buy, even though he utilized these procedures before seeking a warrant in roughly 95 percent of his cases. In his warrant application, Officer Smith identified Mancini's apartment as the place he sought permission to search in order to discover evidence of Matt's illicit drug activity. A Pierce County superior court judge then signed the warrant authorizing a search of Mancini's apartment.

On January 5, 2011, Officer Smith led a team of armed officers to execute the search warrant at Mancini's apartment at 28625 16th Avenue SW, Apartment B-1. The officers used a battering ram to breach the door to Mancini's apartment, entered the apartment, handcuffed Mancini, and moved her out of the apartment. However, immediately after he entered the apartment, Officer Smith knew that his team was in the wrong apartment because the apartment was "the exact opposite" of how the confidential informant had described Matt's apartment. Matt actually resided in apartment A1, not apartment B1. The confidential informant had misidentified the apartment.

Mancini subsequently filed a lawsuit against the City of Tacoma, the Tacoma Police Department and the chief of the Tacoma Police Department (the

---

[1] Smith never verified this belief before proceeding to obtain a search warrant.

3

City). Her complaint pled the following causes of action: negligence, breach of duty to train and supervise, assault and battery, false imprisonment, defamation, false light, invasion of privacy, outrage, violation of RCW 49.60.030,[2] and violations of numerous provisions of the Washington State Constitution. Mancini v. City of Tacoma, No. 71044-3-I, slip op. at 6 (Wash. Ct. App. June 8, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/710443.pdf (hereinafter Mancini I). She sought an award of damages resulting from the police raid of her apartment.

The City moved for partial judgment on the pleadings, and the trial court dismissed Mancini's negligent training and supervision claim and her constitutional claims. Mancini I, No. 71044-3-I, slip op. at 6. Subsequently, the City moved for summary judgment on all of Mancini's remaining claims. Mancini I, No. 71044-3-I, slip op. at 9. The trial court granted the motion and Mancini appealed. Mancini I, No. 71044-3-I, slip op. at 10-11.

On appeal, we concluded that dismissal on summary judgment was proper as to her claims of defamation and outrage, but unwarranted as to her remaining claims of negligence, battery, assault, false imprisonment, and invasion of privacy. Mancini I, No. 71044-3-I, slip op. at 11. Pertinently, we concluded that Mancini's negligence claim was not barred by the public duty doctrine, that the City had not established that she alleged a claim for negligence that encompassed only a noncognizable claim of negligent investigation, and that there was sufficient evidence of a genuine dispute of material fact regarding her

---

[2] Washington Law Against Discrimination, ch. 49.60 RCW.

4

negligence claim to preclude summary judgment. Mancini I, No. 71044-3-I, slip op. at 18-19 n.12. We remanded the negligence and the four intentional tort claims to the trial court.

At trial, as pertaining to the negligence claim, Mancini presented testimony from Officer Smith and from expert witness former Seattle Police Chief Norm Stamper.

During Officer Smith's testimony, he explained that he conducted surveillance on targeted addresses in 95 percent of his drug investigations, but did not do so here. Similarly, he testified that he did not perform a controlled buy[3] before seeking a warrant to search Mancini's apartment, even though he normally did so in 95 percent of his drug investigations. Officer Smith also testified that he ran database searches on both Matt and the address identified by the confidential informant. The searches revealed that the apartment identified by the informant was rented by Mancini. Officer Smith explained that, at the time, he believed that this information supported, rather than contradicted, the confidential informant's identification because the confidential informant had explained that Matt's apartment was rented in his mother's name and Mancini was approximately the right age and race to have potentially been Matt's mother.

During Chief Stamper's testimony, he testified that it was his expert opinion that Officer Smith should have performed both surveillance and a controlled buy before obtaining a warrant. According to Chief Stamper, Officer

---

[3] As explained by Chief Stamper, a controlled buy occurs when a confidential informant is provided with marked money, equipped with a wire for audio recording, and sent into a residence to purchase drugs. After leaving the residence, the confidential informant immediately meets with officers to provide them with the drugs and explain the events that occurred.

Smith's mistake was in trusting the information provided by the confidential informant and not verifying that information through proper investigatory steps before relying on it to obtain a warrant.

Following the close of Mancini's case in chief, the City moved for judgment as a matter of law on the negligence claim, asserting that all of the evidence presented on the negligence claim pertained to investigative acts and that negligent investigation was not a cognizable claim in Washington. In response to the motion, Mancini defended her claim by stating:

> There was virtually no police work done here. They put a drug informant in a car, drove her by four identical buildings and said, "Point out which one is where you saw the drugs." That was the extent of the investigation.
>
>  . . . .
>
> What is negligence on the part of the officer? The officer admitted that he does surveillance in 95 percent of his cases, and he did none here. They did not attempt a controlled buy. They didn't do anything, and they haven't shown us that they've done anything.
> And it certainly is a question that gets to the jury, and the plaintiff has sustained her burden of proof with Chief Stamper's testimony that this should never happen, and that there are many, many ways to have seen to it that it didn't. And he went through where else you could have surveilled. And, sure, Your Honor has seen the picture I have of the parking lot and the entry to the stairs and the parking lot that go down to Ms. Mancini's apartment. If there had been drug activity and they had surveilled that parking lot at all, they would have at least gotten the right building, and they didn't.

The trial court denied the City's motion.[4] After the close of all the evidence, the City renewed its motion on the same ground. The motion was again denied.

---

[4] Although the trial court did not state a precise reason for its ruling, it did indicate that it believed that we had ruled in Mancini I that Mancini's claim was not a negligent investigation claim and was following that decision.

6

The jury returned a verdict in favor of Mancini on her negligence claim, awarding her damages of $250,000, but found against her on each of her intentional tort claims. The City appeals.[5]

II

The City contends that the trial court should have granted its motion for judgment as a matter of law because Mancini failed to establish facts at trial upon which relief could be granted on her negligence claim.[6] This is so, the City asserts, because the evidence adduced at trial established that Mancini's negligence claim, as tried, was a claim for negligent investigation. Specifically, the City asserts that the evidence adduced at trial showed negligence only during the evidence gathering portion of Officer Smith's investigation prior to the filing of the application for a warrant to search Mancini's apartment[7] and that evidence of negligent investigation of criminal activity does not support a cognizable negligence claim against law enforcement in Washington. We agree.

A

When reviewing a trial court's decision to deny a motion for judgment as a matter of law, we apply the same standard as the trial court. Indus. Indem. Co. of the Nw., Inc. v. Kallevig, 114 Wn.2d 907, 915, 792 P.2d 520 (1990). Although not cited to us by the City in its Appellant's Brief, CR 50 provides for the resolution of claims by judgment as a matter of law:

---

[5] Mancini does not appeal from the adverse verdicts on the intentional tort claims.

[6] A claim that the opposing party failed to "establish facts upon which relief can be granted" can always be raised on appeal. RAP 2.5(a).

[7] We agree with the City's assertion that any evidence of police wrongdoing occurring during and after the entry to the apartment was material to Mancini's intentional tort claims, not the negligence claim.

### (a) Judgment as a Matter of Law.

(1) *Nature and Effect of Motion.* If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim, counterclaim, cross claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment. A motion for judgment as a matter of law which is not granted is not a waiver of trial by jury even though all parties to the action have moved for judgment as a matter of law.

(2) *When Made.* A motion for judgment as a matter of law may be made at any time before submission of the case to the jury.

"Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997) (citing Indus. Indem. Co., 114 Wn.2d at 915-16). Evidence is substantial if it would convince "an unprejudiced, thinking mind." Hojem v. Kelly, 93 Wn.2d 143, 145, 606 P.2d 275 (1980).

"In general, Washington common law does not recognize a claim for negligent investigation because of the potential chilling effect such claims would have on investigations."[8] Janaszak v. State, 173 Wn. App. 703, 725, 297 P.3d

---

[8] There are two exceptions to this general rule. First, our Supreme Court implied such a cause of action for parents suspected of child abuse and their children in Tyner v. Dep't of Soc. & Health Servs., 141 Wn.2d 68, 82, 1 P.3d 1148 (2000). The scope of this claim was then narrowed to negligent investigations resulting in harmful placement decisions. M.W. v. Dep't of Soc. & Health Servs., 149 Wn.2d 589, 602, 70 P.3d 954 (2003). Second, if an employer is contractually obligated to provide reasons for dismissal to an employee, the employer may be held liable for failing to conduct a reasonable investigation prior to terminating the employee. Lambert v. Morehouse, 68 Wn. App. 500, 505-06, 843 P.2d 1116 (1993). However, when an

723 (2013) (citing Ducote v. Dep't of Soc. & Health Servs., 167 Wn.2d 697, 702, 222 P.3d 785 (2009). In particular, we have declined to recognize a cognizable claim for negligent investigation against law enforcement officials. Fondren v. Klickitat County, 79 Wn. App. 850, 862-63, 905 P.2d 928 (1995); Donaldson v. City of Seattle, 65 Wn. App. 661, 671, 831 P.2d 1098 (1992); Dever v. Fowler, 63 Wn. App. 35, 44-45, 816 P.2d 1237, 824 P.2d 1237 (1991).

Our Supreme Court has yet to explicitly define the scope of that which constitutes a negligent investigation claim. Similarly, no Washington appellate opinion purports to set forth the precise boundaries of this forbidden claim. Indeed, in its briefing to us, the City did not offer a definition of the forbidden tort. When questioned at oral argument as to whether the City was then prepared to offer a definition of the forbidden tort, grounded in the case law, the City indicated that it was not prepared to do so. With all this being said, it is apparent that a negligent investigation claim must encompass, at minimum, assertions of negligence occurring during the authorized evidence gathering aspects of police work.[9]

B

The evidence of negligence adduced by Mancini at trial was directed at establishing negligence during the evidence gathering portion of the police investigation, prior to the service of the warrant to search Mancini's apartment. Officer Smith, while testifying, explained that he performed surveillance and a

---

employment relationship is at will, then this exception does not apply. Lambert, 68 Wn. App. at 506.

[9] The focus must be on the duty alleged to have been breached. Where that duty was to "investigate better," in our view, a negligence claim has become a negligent investigation claim.

controlled buy in roughly 95 percent of his drug investigation cases, but did not do so herein. Chief Stamper, Mancini's expert witness, explained that it was bad police work when Officer Smith relied on information provided by a confidential informant without performing necessary steps to verify that information. Specifically, Chief Stamper testified that Officer Smith should have performed surveillance on the apartment and on Matt's vehicle and should have done a controlled buy to confirm that the confidential informant had identified the correct apartment. Chief Stamper explicitly stated that it was his opinion that Officer Smith should have taken additional steps during his investigation to verify the confidential informant's information.

Mancini's argument in response to the City's motion for judgment as a matter of law on her negligence claim makes it plain that her claim, as tried, had become one concerning negligence in the evidence gathering aspects of Officer Smith's investigation.[10] In response to the motion, Mancini explained her claim thusly:

> There was virtually no police work done here. They put a drug informant in a car, drove her by four identical buildings and said, "Point out which one is where you saw the drugs." *That was the extent of the investigation.*
>
>  . . . .
>
> What is negligence on the part of the officer? *The officer admitted that he does surveillance in 95 percent of his cases, and he did none here. They did not attempt a controlled buy.* They didn't do anything, and they haven't shown us that they've done anything.
> And it certainly is a question that gets to the jury, and the

---

[10] We review the ruling on the later of the City's two motions for judgment as a matter of law. See Chaney v. Providence Health Care, 176 Wn.2d 727, 731-32, 295 P.3d 728 (2013). In so doing, we consider the entire record—both as to the evidence and the arguments—extant at that time and, thus, presumed to be within the contemplation of the trial judge at the time the challenged ruling was made.

*plaintiff has sustained her burden of proof with Chief Stamper's testimony that this should never happen, and that there are many, many ways to have seen to it that it didn't. And he went through where else you could have surveilled. And, sure, Your Honor has seen the picture I have of the parking lot and the entry to the stairs and the parking lot that go down to Ms. Mancini's apartment. If there had been drug activity and they had surveilled that parking lot at all, they would have at least gotten the right building, and they didn't.*

(Emphasis added.)

Because the evidence of negligence presented at trial related to the evidence gathering aspects of Officer Smith's investigation, and the legal theories advanced were consistent with this view of the evidence, Mancini's negligence claim, as tried, became a noncognizable claim of negligent investigation. Lacking evidence of negligence outside of the evidence gathering aspects of the police investigation, Mancini did not present sufficient evidence at trial to support a claim upon which relief could be granted. The City's motion for judgment as a matter of law was meritorious. The judgment entered on the jury's verdict must be vacated.

## III

Although the sufficiency of the evidence analysis set forth in section II entirely governs our decision, to be clear as to the bases for our decision, it is necessary for us to explicate as to the inapplicability of certain arguments advanced by the parties.

## A

We first address issues raised by Mancini.

Mancini asserts that the City did not properly preserve its claim of error for appeal. This contention fails for two reasons. First, the record makes clear that, consistent with the requirements of CR 50, the City moved for dismissal both after Mancini rested and at the close of all of the evidence. By so doing, the issue was properly brought to the attention of the trial court, thus preserving the claim of error.

Second, even had the City failed to bring a proper CR 50 motion, a plaintiff's alleged failure to establish facts upon which relief can be properly granted is a claim of error that can be asserted for the first time on appeal. RAP 2.5(a)(2).

Mancini next asserts that our decision in the prior appeal foreclosed the City from asserting its claim in this appeal. Mancini's assertion again fails for several reasons.

In this litigation, we denied the City's request for pretrial dismissal of Mancini's negligence claim. Mancini I, No. 71044-3-I, slip op. at 18. The case was remanded to the trial court. The case was tried. Based on the trial court evidentiary record and the arguments of counsel—both at trial and on appeal— we have ruled that the City is entitled to a dismissal of the claim against it. This procedure has been employed and approved of by our Supreme Court. Roberson v. Perez, 156 Wn. 2d 33, 42-44, 123 P.3d 844 (2005) (analyzing the decisions rendered in Roberson v. Perez, 119 Wn. App. 928, 83 P.3d 1026 (2004), and Rodriguez v. Perez, 99 Wn. App. 439, 994 P.2d 874 (2000)). The City was not foreclosed from presenting its claim to us.

Moreover, the City correctly notes that the evidentiary record—and the arguments of counsel—extant at the close of the trial was both fixed and more complete than was the record presented in Mancini I. Our decision is based on the record of the case, as tried.

In arguing that the City is foreclosed from raising the dispositive issue, Mancini evidences a misapprehension concerning the nature of our prior decision. Mancini argues as if we had granted her affirmative relief in Mancini I. But this was not so.

In the prior appeal, only the City sought affirmative relief. As pertaining to the negligence claim, the request was for pretrial dismissal of the claim. We denied the request. Mancini I, No. 71044-3-I, slip op. at 18. That decision restored the parties to the position they occupied prior to the trial court's grant of summary judgment. The decision did not affirmatively grant either party any relief on the negligence claim.

Our decision was guided by several factors. First, the "objective of a summary judgment is to avoid a useless trial," State v. Shanks, 27 Wn. App. 363, 365, 618 P.2d 102 (1980), not to preclude a warranted one. Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). Thus, the burden is on the moving party to establish that a trial would be useless. Preston v. Duncan, 55 Wn.2d 678, 682, 349 P.2d 605 (1960). This the City did not do.

The City asserted that Mancini's negligence claim must have been a forbidden negligent investigation cause of action. But Mancini denied this. In so doing, she correctly pointed out that she had not pleaded the cause of action as

13

one for negligent investigation. Her denial was strengthened by the fact that all but one of the negligent investigation cases cited to us involved circumstances in which either negligent investigation was explicitly pleaded as a cause of action by the plaintiff or the plaintiff conceded that negligent investigation was, in fact, the claim alleged.[11]

In addition, the City expended no effort to attempt to define exactly what a negligent investigation claim was. Mancini's protestation that she was the master of her own pleadings and that she could not be forced to adopt the City's categorization of her claim as an undefined noncognizable claim, coupled with the fact that she had not, in fact, pleaded the claim as such, had merit. Moreover, the Mancini I briefing appeared to support a claim, premised on the principles underlying the decision in Turngren v. King County, 104 Wn.2d 293, 705 P.2d 258 (1985), that, if adopted by the jury, would render unconsented (having neither actual nor judicial consent) the forced entry into Mancini's home. Nothing in the City's appellate presentation foreclosed this possibility. And we

---

[11] The parties cited to several cases discussing the forbidden claim of negligent investigation: M.W. v. Dep't of Social & Health Servs., 149 Wn.2d 589, 70 P.3d 954 (2003); Rodriguez v. Perez, 99 Wn. App. 439, 994 P.2d 874 (2000), Laymon v. Dep't of Nat. Res., 99 Wn. App. 518, 994 P.2d 232 (2000); Corbally v. Kennewick Sch. Dist., 94 Wn. App. 736, 973 P.2d 1074 (1999); Fondren v. Klickitat County, 79 Wn. App. 850, 905 P.2d 928 (1995); Donaldson v. City of Seattle, 65 Wn. App. 661, 831 P.2d 1098 (1992); Dever v. Fowler, 63 Wn. App. 35, 816 P.2d 1237, 824 P.2d 1237 (1991). Of these cases, all but Donaldson and Fondren considered explicit claims of negligent investigation. Furthermore, in Fondren, the plaintiffs conceded that their negligence claim was, in fact, a negligent investigation claim. And Donaldson involved a negligence claim based on the alleged violation of a limited statutory duty to protect victims of domestic violence, which was not pertinent to Mancini's claim. Thus, none of the case authority cited to us could be described as being "on point." Additionally, our most recent published decisions analyzing the claim of negligent investigation all involved explicitly pleaded claims of negligent investigation. See Janaszak v. State, 173 Wn. App. 703, 712, 725, 297 P.3d 723 (2013); Ducote v. Dep't of Soc. & Health Servs., 144 Wn. App. 531, 533, 186 P.3d 1081 (2008), aff'd, 167 Wn.2d 697, 222 P.3 785 (2009); Lewis v. Whatcom County, 136 Wn. App. 450, 452, 149 P.3d 686 (2006).

did not envision such a claim as lying within the unclear boundaries of a negligent investigation claim.

But, again, our decision granted Mancini no affirmative relief. She retained the obligation to prove her negligence claim without it becoming one for negligent investigation. As set forth in section II, this was not accomplished.

B

We next address several contentions raised by the City.

As previously noted, the City's briefing does not set forth the provisions of CR 50 or discuss case authority applying the rule. It does not set forth the standard for granting such a motion. Instead, arguing from the verdicts rendered by the jury, the City asserts that the trial judge must have been wrong to deny its motion to dismiss. This analytical approach is misguided for several reasons.

First, the City's assignment of error—that the trial court improperly denied its motion for judgment as a matter of law on Mancini's negligence claim—is to a trial court ruling made before Mancini's negligence claim was submitted to the jury. We review that ruling. What the jury did matters not. All action by the jury took place after the challenged ruling was made.

Second, the jury's decisions on Mancini's intentional tort claims could have no bearing on the trial court's application of CR 50 to determine whether Mancini's negligence claim was supported by sufficient evidence to warrant its submission to the jury. The rule is clear that

> [i]f, during a trial by jury, a party has been fully heard *with respect to an issue* and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party *with respect to*

15

*that issue*, the court may grant a motion for judgment as a matter of law against the party on any claim.

CR 50(a)(1) (emphasis added). The rule is the same whether utilized to consider one claim amongst many or the only claim in the case. Thus, Mancini's intentional tort claims were irrelevant as to whether Mancini presented sufficient evidence on her negligence claim to avoid judgment as a matter of law.

Third, even were we to consider the City's assertions about inconsistent jury verdicts impacting a ruling made prior to the submission of the case to the jury, the sole relief available when inconsistent jury verdicts have been rendered is a new trial on all causes of action resolved by the inconsistent verdicts. Gosney v. Fireman's Fund Ins. Co., 3 Wn. App. 2d 828, 856, 419 P.3d 447, review denied, 191 Wn.2d 1017 (2018). The City does not request this. Instead, the City asks that we uphold the verdicts on Mancini's intentional tort claims while striking down the verdict on Mancini's negligence claim. Picking and choosing between a jury's inconsistent verdicts is not a task we are empowered to perform.

Finally, the City's contentions regarding inconsistent verdicts fail because the City did not assign error to any trial court rulings related to inconsistent verdicts. It is a long standing rule that appellate courts will "not review the trial court's action as to questions not submitted to it." Timm v. Gilliland, 53 Wn.2d 432, 434, 334 P.2d 539 (1959) (citing Lewis Pac. Dairymen's Ass'n v. Turner, 50 Wn.2d 762, 314 P.2d 625 (1957); Braman v. Kuper, 51 Wn.2d 676, 321 P.2d 275 (1958)). The City's assignments of error address only the trial court's denial of the City's motion for judgment as a matter of law prior to the submission of

Mancini's claims to the jury. Thus, our decision in this matter is based on the analysis of the trial court's denial of the motion for judgment as a matter of law set forth in section II.

IV

As tried, Mancini's negligence claim became one for negligent investigation. Such a cause of action is not cognizable. Accordingly, the judgment entered on the verdict must be vacated.

Reversed with instructions to enter judgment in favor of the City.

We concur: